**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY CORTESE, individually and on behalf of others similarly-situated, | Civil Action No. 1:19-cv-11189-JSR |
| *Plaintiff*, | |
| -vs- | |
| SKANSKA KOCH, INC.; and SKANSKA USA, INC.; | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' FRCP 12(b)(6) MOTION TO DISMISS THE COMPLAINT**

PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas
10th Floor
New York, NY  10019
(212) 382-0909
*Attorneys for Defendants Skanska*
 *Koch, Inc., and Skanska USA, Inc.*

*On the Brief:*

Gregory R. Begg, Esq.
Michael J. P. Schewe, Esq.

4295717_2

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 3

STANDARD FOR A MOTION TO DISMISS UNDER FRCP 12(b)(6) .............................. 3

LEGAL ARGUMENT ..................................................................................................... 4

   POINT I......................................................................................................................... 4

     NEW YORK STATE'S PREVAILING WAGE LAW IS NOT APPLICABLE
     TO THE PORT AUTHORITY OF NEW YORK ............................................................ 4

     A.   Background regarding the Port Authority................................................... 4

     B.   The Express Intent Test.............................................................................. 7

     C.   The Internal-External Test ......................................................................... 9

   POINT II ..................................................................................................................... 12

     PLAINTIFF'S FIFTH, SIXTH AND SEVENTH CLAIMS FOR RELIEF ARE
     PREEMPTED BY THE FLSA .................................................................................... 12

CONCLUSION............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ageson v. Catherwood*,
   26 N.Y.2d 521, 311 N.Y.S.2d 886, 260 N.E.2d 525 (1970) ......................................9

*Anderson v. Sara Lee Corp.*,
   508 F.3d 181 (4th Cir. 2007)................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .........................................3

*Ayars v. Port Auth. of NY and NJ*,
   2018 WL 3126497 (Sup. Ct., NY Cty. 2018) ..................................................10, 11

*Baron v. Port Auth. of New York & New Jersey*,
   968 F. Supp. 924 (S.D.N.Y. 1997).....................................................................7, 8

*Barrus v. Dick's Sporting Goods, Inc.*,
   732 F. Supp. 2d 243 (W.D.N.Y. 2010) ...................................................................14

*Bush Terminal Co. v. City of New York*,
   152 Misc. 144, 273 N.Y.S. 331 (N.Y. Co. 1934), *aff'd*, 256 A.D. 978, 11
   N.Y.S.2d 554 (1st Dep't 1939), *aff'd*, 282 N.Y. 306, 26 N.E.2d 269 (1940) ............................5

*Curtin v. Port Auth. of N.Y. & N.J.*,
   183 F. Supp. 2d 664 (S.D.N.Y. 2002)..............................................................12, 13

*Dreves v. Hudson Grp. (HG) Retail, LLC*,
   No. 11-CV-4, 2012 U.S. Dist. LEXIS 26218, 2012 WL 668774 (D. Vt. Feb.
   29, 2012) ....................................................................................................16

*Goodman v. Port Authority of New York and New Jersey*,
   2013 WL 5313427 (S.D.N.Y. 2013)........................................................................7

*Gordon v. Kaleida Health*,
   847 F. Supp. 2d 479 (W.D.N.Y. 2012) ............................................................14, 15

*Griffin v. Aldi, Inc.*,
   No. 5:16-CV-00354, 2016 U.S. Dist. LEXIS 172662 (N.D.N.Y. Dec. 14, 2016)....................16

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999) ...........................................................................15

*Hess v. Port Authority Trans-Hudson*,
    513 U.S. 30, 130 L. Ed. 2d 245, 115 S. Ct. 394 (1994) .............................6

*Hinterberger v. Catholic Health Sys.*,
    08-CV-952S, 2012 U.S. Dist. LEXIS 5067, 2012 WL 125270 (W.D.N.Y. Jan.
    17, 2012), *rev'd and remanded* .................................................................14

*Lopez v. Flight Servs. & Sys., Inc.*,
    No. 07-CV-6186 CJS, 2008 U.S. Dist. LEXIS 4744 (W.D.N.Y. Jan. 22, 2008),
    *overruled in non-relevant part by Barrus*, 732 F. Supp. 2d....................15

*Lopez v. Port Authority of New York and New Jersey*,
    171 A.D.3d 500 (1st Dep't 2019) ...............................................................10

*Monahan v. Smyth Auto., Inc.*,
    No. 10-CV-48, 2011 U.S. Dist. LEXIS 9877, 2011 WL 379129 (S.D. Ohio
    Feb. 2, 2011) ..............................................................................................16

*Petras v. Johnson*,
    No. 92-CV-8298, 1993 U.S. Dist. LEXIS 8464, 1993 WL 228014 (S.D.N.Y.
    Jun. 22, 1993)..............................................................................................14

*Port Authority Trans-Hudson Corporation v. Feeney*,
    495 U.S. 299, 109 L. Ed. 2d 264, 110 S. Ct. 1868 (1990) (Brennan, J.,
    concurring in part and concurring in judgment) ...........................................6

*Roman v. Maietta Constr.*,
    147 F.3d 71 (1st Cir. 1998) .........................................................................15

*Rose v. Port Auth. of New York & New Jersey*,
    13 F.Supp.2d 516 (S.D.N.Y. 1998)...............................................................8

*Settecase v. Port Auth. of New York & New Jersey*,
    13 F. Supp. 2d 530 (S.D.N.Y. 1998)..............................................................8

*U.S. ex rel. Siegel v. Roche Diagnostics Corp.*,
    988 F. Supp. 2d 341 (E.D.N.Y. 2013) ...........................................................4

*Sosnowy v. A. Perri Farms, Inc.*,
    764 F. Supp. 2d 457 (E.D.N.Y. 2011) .........................................................13

4295717_2

*Sullivan v. Am. Airlines, Inc.*,
    424 F.3d 267 (2d Cir. 2005)...................................................................................15

## STATUTES

FLSA ....................................................................................................................*passim*

FLSA § 207 ..........................................................................................................14

Labor Law §§ 240 and 241 ...................................................................................11

*N.J.S.A.* § 31:1-8 ..................................................................................................6

New York Labor Law .............................................................................................12

NY Uncons. Laws § 6408 ......................................................................................6

Railway Labor Act ..................................................................................................15

42 Stat. 174 (1921)..............................................................................................4, 5

## OTHER AUTHORITIES

FRCP 12(6) ...........................................................................................................12

FRCP 12(b)(6).....................................................................................................3, 16

## PRELIMINARY STATEMENT

Defendants Skanska Koch, Inc., and Skanska USA, Inc. (collectively "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss certain claims in the Complaint filed in this action by Plaintiff, Anthony Cortese (hereafter "Plaintiff"), pursuant to Federal Rule of Civil Procedure (hereafter "FRCP") 12(b)(6).  The thrust of Plaintiff's Complaint is that he was paid a New Jersey prevailing wage (and not the higher prevailing wage rate for New York City) for work done on the New York side of the George Washington Bridge ("GWB").  Plaintiff, however, misunderstands the applicability of New York's prevailing wage laws to the Port Authority of New York and New Jersey (hereafter "the Port Authority"), which is a bi-state compact to which each state's prevailing wage laws do not apply.

According to the Complaint, Plaintiff was a crane operator referred to Defendants' GWB project of the Port Authority by the International Union of Operating Engineers, Local 825 (hereafter "the Union").  He alleges that the Port Authority, Defendants and the Union agreed to allow workers from unions in both states to work on either side (or span) of the GWB, regardless of which state their union hailed from.  Plaintiff, a New Jersey-based union member, alleges that he performed work on the New York span of the GWB project and was paid the New Jersey prevailing wage rate.  Since the New York City prevailing wage rate is higher, Plaintiff mistakenly believes that he was underpaid wages, benefits and overtime compensation for the work he performed on the New York span of the GWB (hereafter his "wage claims").  It is important to emphasize that Cortese is not claiming a minimum wage or overtime underpayment; Cortese is simply looking to receive the higher New York City prevailing wage rate than the rate at which he

has already been paid (*i.e.*, the New Jersey prevailing wage rate) for the short amount of time he spent working on the GWB's New York span.

Plaintiff's wage claims based on the failure to pay New York City prevailing wages are misplaced. The Port Authority is a bi-state compact authorized by Congress, which is subject only to both states acting through joint and common agency. To determine whether a state labor and employment laws apply to the Port Authority, the Second Circuit has used two tests: express intent or internal-external. Pursuant to the express intent test, which is more commonly-used in the Second Circuit, laws must explicitly mention the Port Authority for them to apply to it. Since the New York prevailing wage laws do not expressly mention the Port Authority, courts cannot conclude that both states intended for them to apply to the Port Authority.

The Second Circuit has also used the internal-external test to determine laws' applicability to the Port Authority. Under this test, external laws that protect the public (such as those relating to tortious acts) can be enforced as to the Port Authority, but state laws that attempt to regulate the Port Authority's internal operations are precluded. Since prevailing wage laws seek to govern the Port Authority's internal operations (*i.e.*, its ability to set wages and other employment policies), these laws are not enforceable against the Port Authority. Pursuant to either test, Plaintiff's contention that he was entitled to avail himself of the higher New York state prevailing wage rate fails as a matter of law. As Plaintiff's First, Second, Third and Fourth claims for relief (hereafter collectively referred to as "the FLSA claims") are premised solely on the fact that he was paid a different prevailing wage rate than the one he preferred, they should each be dismissed in their entirety and with prejudice.

4295717_2

Plaintiff Fifth, Sixth and Seventh claims for relief assert state common law claims for *quantum meruit*, unjust enrichment, and breach of contract, respectively.  Each of these claims are based on the same factual allegations supporting his wage claims under the FLSA – *i.e.*, he was underpaid because Defendants' used the New Jersey prevailing wage rate when Plaintiff would have preferred the New York City prevailing wage rate.  These state common law claims are preempted by the FLSA, as they are duplicative of Plaintiff's FLSA claims.  Plaintiff can pursue his wages claims under the FLSA, but he cannot pursue identical claims under state common law as this would frustrate the remedial provisions of the FLSA.  The state common law claims do not stand on their own and, therefore, the Fifth, Sixth and Seventh claims for relief should be dismissed as a matter of law, in their entirety and with prejudice.

## FACTUAL BACKGROUND

At the motion to dismiss stage, we are limited to the allegations in the Complaint, which are incorporated herein by reference.

## STANDARD FOR A MOTION TO DISMISS UNDER FRCP 12(b)(6)

In order to survive a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*, 556 U.S. at 678, 129 S. Ct. at 1949.  In deciding a motion to dismiss, "a court must 'accept all

4295717_2

allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp*., 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).

## LEGAL ARGUMENT

## POINT I

### NEW YORK STATE'S PREVAILING WAGE LAW IS NOT APPLICABLE TO THE PORT AUTHORITY OF NEW YORK

Plaintiff's First, Second, Third and Fourth Claims for Relief are premised on the fact that he believes he was entitled to, but did not receive, the New York City prevailing wage rate for his work on Defendants' GWB Project.  (*See* Paragraph 31 of the Complaint, affixed to the Schewe Decl. as Exhibit A).  The GWB, however, is owned by and falls within the jurisdiction of the Port Authority of New York and New Jersey (hereafter "Port Authority"), which is not governed by state prevailing wage laws unless they satisfy the express intent or internal-external tests.  State prevailing wage laws do not meet the standards of either test and, therefore, Plaintiff's claims relating to non-payment of the New York City prevailing wage rate are without merit and should be dismissed.

**A.      Background regarding the Port Authority**

New York and New Jersey have a long history of cooperation regarding their shared port. In 1834, the two states entered into "an agreement fixing and determining the rights and obligations of the two States" with respect to the "bay of New York and the Hudson River."  *See* 42 Stat. 174 (1921).  As commerce in the port expanded, the states' legislatures, in 1917, authorized their

respective governors to appoint members to a "New York, New Jersey Port and Harbor Development Commission," for the purpose of studying and making recommendations concerning the operation of the common port. *See Bush Terminal Co. v. City of New York*, 152 Misc. 144, 147, 273 N.Y.S. 331, 335 (N.Y. Co. 1934) (detailing history of the Port Authority), *aff'd*, 256 A.D. 978, 11 N.Y.S.2d 554 (1st Dep't 1939), *aff'd*, 282 N.Y. 306, 26 N.E.2d 269 (1940). The end result was an interstate compact signed on April 20, 1921, and ratified by Congress on August 23, 1921, creating the Port Authority (hereafter "the Compact"). *Id*. at 149, 273 N.Y.S. at 337.

In giving its consent to the Compact, Congress acknowledged that the waterways common to the two states had "become commercially one center or district." 42 Stat. 174. It recognized that "better coordination of the terminal, transportation, and other facilities of commerce in, about, and through the port of New York will result in great economies, benefiting the Nation as well as the States of New York and New Jersey." *Id*. It concluded that these ends could best be attained "through the cooperation of the two States by and through a joint or common agency." *Id*.

By the terms of the Compact, the Port Authority is defined as "a body corporate and politic, having the powers and jurisdiction hereinafter enumerated, and such other and additional powers as shall be conferred upon it by the legislature of either State **concurred in by the legislature of the other**, or by Act or Acts of Congress […]" *Id*. at Art. 3 (emphasis added). The enumerated powers are broad, and include:

> [F]ull power and authority to purchase, construct, lease, and/or operate any kind of terminal or transportation facility [in the port] district; and to make charges for the use thereof; and for any of such purposes to own, hold, lease, and/or operate real or personal property,

> to borrow money and secure the same by bonds or by mortgages upon
> any property held or to be held by it.

*Id*. at Art. 6.  The compact further provides for the Port Authority to "have such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either State **concurred in** by the legislature of the other."  *Id*. at Art. 7 (emphasis added).

The U.S. Supreme Court has held that "bistate entities […] typically are creations of three discrete sovereigns; two States and the federal government […] and are not subject to the unilateral control of any one of the States that compose the federal system."  *Hess v. Port Authority Trans-Hudson*, 513 U.S. 30, 130 L. Ed. 2d 245, 257, 115 S. Ct. 394 (1994); *see also Port Authority Trans-Hudson Corporation v. Feeney*, 495 U.S. 299, 314-316, 109 L. Ed. 2d 264, 110 S. Ct. 1868 (1990) (Brennan, J., concurring in part and concurring in judgment).  Each state, acting alone, through its governor may block Port Authority measures; however, only by acting together through their legislatures, may both states increase Port Authority powers or add to its responsibilities.  *Hess*, 130 L. Ed. 2d at 258; *N.J.S.A.* § 31:1-8; NY Uncons. Laws § 6408.

In accordance with *Hess* and the Compact, New York courts have clearly established that a bi-state agency is bound by the terms of the Compact and any amendments or supplements implemented by legislative action *of both states acting jointly and bilaterally*.  To determine a joint or bilateral intent, courts must interpret what "concurred in" means in the context of legislative action relative to the Port Authority.  In the Second Circuit, courts mainly use the "express intent" test to determine whether both states have concurred in legislative action, while also using the

"internal-external" test in certain situations.  Under either test, state prevailing wage laws are not applicable to the Port Authority.

## B.     The Express Intent Test

Express intent means just that: an explicit affirmation by each state's legislature that a particular law should apply to the Port Authority.  As this Court plainly put it:

> The absence from the text and legislative history […] of any mention of [the Port Authority], in addition to the absence of an express statement by either state legislature that it was amending or supplementing the provisions of the Compact and that the law would take effect upon the enactment of identical legislation in the opposite state, seems to indicate that neither New York or New Jersey legislatures intended the laws to apply to the internal operations of the [Port Authority].

*Baron v. Port Auth. of New York & New Jersey*, 968 F. Supp. 924, 929 (S.D.N.Y. 1997) (declining to unilaterally impose New York's human rights laws on the New York and New Jersey Port Authority where there was no evidence that either state intended its anti-discrimination laws to apply).  This reasoning was also followed in *Goodman v. Port Authority of New York and New Jersey*, 2013 WL 5313427, *9 (S.D.N.Y. 2013).  There, this Court again found that, with regard to state prevailing wage laws, they do not apply under the express intent standard:

> The New Jersey State Wage and Hour Law and the New Jersey Prevailing Wage Law, as single state legislations, are inapplicable to the Port Authority.  Both the state and federal courts in New York have long held that in order to satisfy the "concurred in" language of a Compact, the legislatures of both states must do so "clearly and expressly" by enacting substantial identical legislation in both states.  *See Dezaio [v. Port Auth. of New York & New Jersey*, 205 F.3d 62, 65 (2d Cir. 2000)] (adopting the express intend standard for interpreting Compact amendment); *see also Malverty v. Waterfront Commission of New York Harbor,* 71 N.Y.2d 977, 979, 529 N.Y.S.2d

> 67, 524 N.E.2d 421 (1988); *Rose v. Port Auth. of New York & New Jersey,* 13 F.Supp.2d 516, 523 (S.D.N.Y. 1998). 12 N.Y.C.R.R.[1] § 142–2.2, upon which Goodman bases his overtime claim, does not contain any express language governing the Port Authority, and thus cannot be applied to Port Authority or PATH.   *See Ageson v. Catherwood,* 26 N.Y.2d 521, 311 N.Y.S.2d 886, 260 N.E.2d 525 (1970) (holding that New York State's minimum wage law does not govern wages paid to Port Authority employees).   This additionally applies to both the New Jersey State Wage and Hour Law, N.J.A. 34:11–56a, and the New Jersey Prevailing Wage Law, N.J.S.A. 34:1156.25 *et seq.*, neither of which contain express language applying these statutes to the Port Authority.

*Id.*

Federal courts in the Second Circuit have, in fact, almost uniformly adopted the express intent standard, finding the New York view "more in line with the language" of the compacts before them.   *See Dezaio*, *supra*, 205 F.3d at 65 (same holding as *Baron*); *see also Rose*, *supra*, 13 F. Supp. 2d at 523 (stating that the same or similar public policy of two states is not sufficient to impose law of either state on the agency unless legislation "expressly mentions the bi-state entity"); *Settecase v. Port Auth. of New York & New Jersey*, 13 F. Supp. 2d 530, 535-36 (S.D.N.Y. 1998) ("[i]f New York and New Jersey intend their own [...] laws to apply to the Port Authority, they have the means to do so clearly and expressly, as they have done for other laws.").

It is beyond dispute that the New York State prevailing wage law (cited by Plaintiff at paragraph 31 of the Complaint) does not explicitly mention the Port Authority anywhere in its text. Plaintiff cannot increase the jurisdiction and applicability of the New York State prevailing wage law to suit his preferences.   There is no evidence of joint or common agency between New York

---

[1]  The NYCRR is the New York Code of Rules and Regulations, and Section 142-2.2 is entitled "Overtime rate."

and New Jersey to have New York's prevailing wage laws apply to the Port Authority.  Therefore, as Plaintiff was not entitled to the higher New York City prevailing wage rate, his wage claims fail as a matter of law.[2]

**C.       The Internal-External Test**

In addition to the express interest test to interpret of the "concurred in" language of the Compact, New York state and federal courts have also, at various times, used the internal-external test for determining whether to apply New York state's labor and/or employment laws to the Port Authority.  In *Agesen v. Catherwood*, 26 N.Y.2d 521 (1970), the New York Court of Appeals held that the New York state prevailing wage statute could not properly be applied to the Port Authority under the internal-external test.  The Court of Appeals opined that

> [T]he inapplicability of section 220 of the [NY] Labor Law [the prevailing wage statute] results not from any express exclusion or inherent workability, but rather from a general intent, amply reflected in the compact, that the *internal* operations of the Authority be independent of the direct control of either States acting without concurrence of the other.  Section 220, enacted long before the creation of the Authority, should not be construed to impose a unilateral regulation of the wages of only a fraction of the Authority's employees, namely, those building and mechanical workers who, it is alleged, work solely on projects within the State of New York.

*Id*. at 525 (emphasis added).  The reference to "internal operations" indicates that the *Agesen* court believed that labor and employment laws should be judged as to whether they affect internal

---

[2] To be clear, Plaintiff is not claiming he was not paid at all or not credited with overtime; he is arguing that he was underpaid based on his belief that he should have received the New York City prevailing wage rate for his work on the New York span of the GWB.  Since his belief was mistaken, he was properly paid and his claims fail as a matter of law.

operations of the Port Authority (in which case, neither state's laws would apply) or the external health and safety of either state (in which case, that state's law may apply to protect the public at large).

The internal-external test has been cited favorable by New York state courts as recently as April 2019. *See Lopez v. Port Authority of New York and New Jersey*, 171 A.D.3d 500, 501 (1st Dep't 2019) (employment test results were "related solely to [the Port Authority's] hiring practices, a wholly internal matter"). It has also been cited by New York's federal courts. To wit, thirty years after *Agesen*, the Second Circuit used the internal-external test to conclude that New York's antidiscrimination laws were not applicable to the Port Authority. *Dezaio*, *supra*, 205 F.3d at 65 ("*Agesen* teaches that internal operations of the Authority – unlike its external conduct which is subject to each of the Compact State's health and safety laws – are independent from unilateral control of either State without the other's concurrence").

The state courts in New York have stayed committed to the internal-external test, even though New York's federal courts have more often applied the "express intent" standard.[3] *See Ayars v. Port Auth. of NY and NJ*, 2018 WL 3126497, *4 (Sup. Ct., NY Cty. 2018) ("the Court rejects the Port Authority's argument that there is a basis in federal law to upend *Agesen's* internal-external test that has prevailed in this state for almost fifty years"). After reviewing the various

---

[3] *See* Section I.B, above.

cases on both sides of the Hudson River, the *Ayars* court felt the reasoning behind the internal-external distinction was still sound, especially when applied to external torts:

> [T]his Court finds *Agesen*'s internal-external distinction to be well-founded and sound policy.  Whereas no one state should be allowed to fracture the internal operations of an interstate compact by, for example, creating a law that applies only to compact employees in that state, a state legislature need not get concurrence from its partner legislature whenever it seeks to hold a compact accountable **for tortious acts** affecting the health and safety of its public.  This policy is particularly appropriate in light of the express intent of New York and New Jersey that "the said two states consent to liability on the part of the port authority in such suits, actions or proceedings **for tortious acts** committed by it and its agents to the same extent as though it were a private corporation."  (NY Unconsolidated § 7106; NJ Stat Ann 32:1-162.).

*Id*. at *6 (emphasis added).   Decisions regarding wages or other terms and conditions of employment are clearly internal matters under the *Agesen* test, and not external, tort-related concerns that affect the health and safety of the public in either state.  *Id*. at *7 ("[u]nlike classical areas of internal operations like employment discrimination and collective bargaining – that affects the employee-employer relationship – Labor Law §§ 240 and 241 has no application to Port Authority employees").  Therefore, even under the internal-external test, there is no basis for the prevailing wage laws of either state to apply to workers at the Port Authority.

Pursuant to the express intent test, which is preferred in the Second Circuit, the mandate is clear: prevailing wage laws of either New York or New Jersey do not apply to the Port Authority because neither statute specifically mentions the Port Authority.  The internal-external test has also been used by state and federal courts in New York, differentiating external laws that affect the

public and internal laws that could govern the operations of the Port Authority.  These cases have all said that prevailing wage and other labor and employment claims arising under the New York Labor Law seek to govern the Port Authority's internal operations with its employees and are, thus, not applicable.  Whether this Court prefers to use the internal-external or express intent test, Plaintiff's claims fail as a matter of law.  Therefore, the First, Second, Third and Fourth Claims of Relief in Plaintiff's Complaint should be dismissed, pursuant to FRCP 12(6), in their entirety and with prejudice.

## POINT II

### PLAINTIFF'S FIFTH, SIXTH AND SEVENTH CLAIMS FOR RELIEF ARE PREEMPTED BY THE FLSA

Plaintiff attempts to restate his wage claims arising under the FLSA in terms of a breach of contract claim (Seventh Count) and two equitable claims – *i.e.*, *quantum meruit* (Fifth Count) and unjust enrichment (Sixth Count).  The FLSA expressly prohibit these types of workarounds, as it is the exclusive remedy for the types of violations it covers.  Therefore, the Fifth, Sixth and Seventh Claims for Relief should be dismissed as a matter of law.

Here, the issue is not whether the FLSA completely or expressly preempts state law claims – it does not.  The issue is whether the FLSA preempts the particular common law claims brought by Plaintiff.  Preemption may be express or implied, and implied preemption may take the form of either field preemption or conflict preemption.  *Curtin v. Port Auth. of N.Y. & N.J.*, 183 F. Supp. 2d 664, 667 (S.D.N.Y. 2002).  "Conflict preemption arises where (1) 'compliance with both federal and state regulations is a physical impossibility' or (2) the state law 'stands as an obstacle to the

4295717_2

accomplishment and execution of the full purposes and objectives of Congress.'" *Id*. (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992)).

In *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc*., the District Court for the Eastern District of New York, in line with numerous other federal courts that have considered the issue, determined that conflict preemption existed as to the plaintiffs' state common law overtime claims because:

> to allow plaintiffs to pursue duplicative state-law claims and thus circumvent the remedial scheme established by the FLSA would render superfluous the requirement in Section 216(c) that a party's private right terminate upon commencement of an action by the Secretary of Labor. Consequently, allowing state common law claims to proceed based on the same facts as a party's FLSA claims would present an obstacle to enforcement of the FLSA by allowing plaintiffs to thwart Congress' preference, as evidenced in Section 216(c), to have FLSA violations be prosecuted by the Department of Labor, if and when the Secretary determines that such action is appropriate.

770 F. Supp. 2d 497, 532 (E.D.N.Y. 2011); *see also Sosnowy v. A. Perri Farms, Inc*., 764 F. Supp. 2d 457, 467 (E.D.N.Y. 2011) ("[T]hrough the comprehensive remedial scheme [of the FLSA], Congress struck the intended balance between the purpose of the FLSA and the vindication of its provisions, and therefore allowing additional remedies for duplicative claims would serve as an obstacle to the enforcement of the FLSA."). As stated by the EDNY in *DeSilva*, "this Court agrees with the numerous other courts that have found the FLSA's civil enforcement scheme to be exclusive and, accordingly, concludes that FLSA preempts any state common law claims that are duplicative of plaintiffs' FLSA cause of action." 770 F. Supp. 2d at 532-33.

4295717_2

Other federal courts in this Circuit have held similarly.  *See Barrus v. Dick's Sporting Goods, Inc*., 732 F. Supp. 2d 243, 263 (W.D.N.Y. 2010) (dismissing "plaintiffs' common law claims seeking allegedly unpaid overtime as preempted by FLSA"); *Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 495 (W.D.N.Y. 2012) ("[T]o the extent Plaintiffs are seeking unpaid overtime wages that are available under the FLSA, their common law claims are preempted [...]"); *Petras v. Johnson*, No. 92-CV-8298, 1993 U.S. Dist. LEXIS 8464, 1993 WL 228014, at *2, 4 (S.D.N.Y. Jun. 22, 1993) (noting that "[c]ourts have consistently held that [§ 207 of the FLSA] is the exclusive remedy for enforcing rights created under the FLSA," and dismissing the plaintiff's fraud claim because the "alleged fraud consist[ed] of the intentional frustration of the FLSA overtime rules, for which the FLSA provides a remedy in the form of liquidated damages"); *Hinterberger v. Catholic Health Sys*., 08-CV-952S, 2012 U.S. Dist. LEXIS 5067, 2012 WL 125270 (W.D.N.Y. Jan. 17, 2012) ("[T]o the extent Plaintiffs are seeking unpaid overtime wages that are available under the FLSA, their claims are preempted.[...]"), *rev'd and remanded*,[4] 548 F. App'x 3 (2d Cir. 2013);

---

[4] The Second Circuit Court of Appeals vacated the decision in *Hinterberger*, based on the unique procedural posture of that case.  548 F. App'x 3, 5 (2d Cir. 2013).  In *Hinterberger*, the defendants had filed a notice of removal with respect to the plaintiffs' state complaint asserting common law claims.  *Id*. at 4.  The plaintiffs sought remand to state court on the ground that the district court lacked jurisdiction over the claims.  *Id*.  The district court disagreed with the plaintiffs, holding that it had subject matter jurisdiction because the FLSA precluded the plaintiffs' overtime pay claims.  *Id*.  The Second Circuit Court of Appeals reversed on this point, explaining that the "artful pleading doctrine" permits removal based on preemption only if federal law completely preempts the relevant state law claims.  *Id*. at 4-5.  Because the FLSA is not one of the few federal statutes that supports complete preemption, the Second Circuit Court of Appeals vacated the district court's decision, while specifically noting that the defendants would have the opportunity later to present an "ordinary FLSA preemption defense."  *Id*. at 5 n.1.  Therefore, the Second Circuit in *Hinterberger*, which considered only whether the FLSA supported complete preemption and expressly did not decide whether an ordinary preemption defense would succeed.  "Many federal statutes — far more than support complete preemption — will support a defendant's argument that

*Lopez v. Flight Servs. & Sys., Inc.*, No. 07-CV-6186 CJS, 2008 U.S. Dist. LEXIS 4744, at *6-7 (W.D.N.Y. Jan. 22, 2008)  (dismissing state common law claims for fraud, breach of contract, breach of implied covenant of good faith, tortious interference with contract, and unjust enrichment as preempted by the FLSA), *overruled in non-relevant part by Barrus*, 732 F. Supp. 2d at 263.

The decisions of the district courts in this Circuit that the FLSA preempts common law claims are consistent with decisions from the First and Fourth Circuit Courts of Appeals holding that the elaborate enforcement mechanism adopted by the FLSA is the exclusive remedy for violations of its mandates.  *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (collecting cases); *Roman v. Maietta Constr.*, 147 F.3d 71, 76 (1st Cir. 1998).  *Cf. Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (the FLSA has "a comprehensive remedial scheme" and therefore preempts state common law claims for contribution or indemnification).

The relevant inquiry is one of duplication.  District courts in this Circuit have generally held that state "common law claims are preempted to the extent they seek recovery available under the FLSA, but are not preempted to the extent that state law provides a remedy not available under federal law." *Gordon*, *supra*, 847 F. Supp. 2d at 494 (collecting cases).  Under this approach, where the state common law claims are distinct from the FLSA claims, the latter do not preempt the

---

because federal law preempts state law, the defendant cannot be held liable under state law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272-73 (2d Cir. 2005).  For example, in *Sullivan*, the Second Circuit Court of Appeals held that, although the Railway Labor Act supported an ordinary preemption defense, it did not support complete preemption.  *Id.*

former.  *Dreves v. Hudson Grp. (HG) Retail, LLC*, No. 11-CV-4, 2012 U.S. Dist. LEXIS 26218, 2012 WL 668774, at *5 (D. Vt. Feb. 29, 2012).  In other words, the question is whether in the absence of an FLSA claim, the plaintiff would have a viable state common law claim.  If the answer is yes, the state common law claim is not preempted; if the answer is no, it is preempted.  *See Monahan v. Smyth Auto., Inc*., No. 10-CV-48, 2011 U.S. Dist. LEXIS 9877, 2011 WL 379129, at *5 (S.D. Ohio Feb. 2, 2011) (finding that the plaintiffs' FLSA claim was not preempted by the state common law claim because "if the FLSA claim were to disappear, [the state common law] claim could still be viable"); *Griffin v. Aldi, Inc.*, No. 5:16-CV-00354 (LEK/ATB), 2016 U.S. Dist. LEXIS 172662, at *11 (N.D.N.Y. Dec. 14, 2016) ("Plaintiffs' unjust enrichment claim duplicates this FLSA claim and is therefore preempted.").

In the instant case, Plaintiff cannot reasonably dispute that his common law claims for breach of contract, unjust enrichment and *quantum meruit* are simply a rehashing of his FLSA wage claims.  There are no additional factual details asserted by the Plaintiff to support independent common law causes-of-action that could stand on their own.  These common law claims are, without question, duplicative of the FLSA claims and, therefore, should be dismissed as preempted by the FLSA.

## **CONCLUSION**

For the foregoing reasons, Defendants pray that this Court enter an order, pursuant to FRCP 12(b)(6), dismissing in their entirety, with prejudice, Plaintiff's First, Second, Third, Fourth, Fifth, Sixth and Seventh Claims for Relief.

4295717_2

16

Dated:  New York, New York
        February 14, 2020

PECKAR & ABRAMSON, P.C.

By:     */s/ Gregory R. Begg*
        _____
        Gregory R. Begg, Esq.
        1325 Avenue of the Americas
        10th Floor
        New York, NY  10019
        (212) 382-0909
        *Attorneys for Defendants Skanska Koch, Inc.,*
          *and Skanska USA, Inc.*