## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ANTHONY CORTESE, individually and on behalf of others similarly-situated,<br><br>*Plaintiff*,<br><br>-vs-<br><br>SKANSKA KOCH, INC.; and SKANSKA USA, INC.;<br><br>*Defendants*. | Civil Action No. 1:19-cv-11189-JSR |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE ACTION

PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas
10th Floor
New York, NY  10019
(212) 382-0909
*Attorneys for Defendants Skanska*
    *Koch, Inc., and Skanska USA, Inc.*

*On the Brief:*

Gregory R. Begg, Esq.
Shannon D. Azzaro, Esq.
Michael J. P. Schewe, Esq.

4313809_1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT AND FACTUAL BACKGROUND ...........................................1

STANDARD TO CERTIFY A FLSA COLLECTIVE ACTION ...................................................6

LEGAL ARGUMENT ..........................................................................................................................8

POINT I:  PLAINTIFF HAS NOT MET HIS BURDEN TO CONDITIONALLY
CERTIFY A COLLECTIVE ........................................................................................8

    A.  Plaintiff has failed to sufficiently identify any individuals or groups
of individuals that are similarly situated to him...........................................9

    B.  There is no commonality of the legal claims within Plaintiff's
proposed collective. ...................................................................................15

    C.  Plaintiff's Proposed Notice is not sufficiently tailored to define an
appropriate collective and advise potential collective members of
their rights. ................................................................................................18

CONCLUSION...................................................................................................................................20

4313809_1

## TABLE OF AUTHORITIES

<u>**Page(s)**</u>

**Cases**

*Armstrong v. Weichert Realtors*,
  2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) .................................................................. 13

*D'Anna v. M/A-COM, Inc.*,
  903 F. Supp. 889 (D. Md. 1995) ................................................................................................ 11

*Eng-Hatcher v. Sprint Nextel Corp.*,
  2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ........................................................................... 11

*Flores v. Osaka Health SPA, Inc.*,
  2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ......................................................................... 9, 10

*Guaman v. 5 M Corp.*,
  2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) .............................................................................. 7

*New York City Health & Hosps. Corp.*,
  2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) .................................................................. 14

*Ikikhueme v. CulinArt, Inc.*,
  No. 13 CIV. 293 JMF, 2013 WL 2395020 (S.D.N.Y. June 3, 2013) ........................................... 9

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
  985 F. Supp. 2d 439 (S.D.N.Y. 2013) ....................................................................................... 10

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ......................................................................................... 9

*Mata v. Footbridge, LLC*,
  2015 WL 3457293 (S.D.N.Y. June 1, 2015) ............................................................................... 7

*McGlone v. Contract Callers, Inc.*,
  867 F.Supp.2d 438 (S.D.N.Y. 2012) ........................................................................................... 7

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ............................................................................................... 6, 7, 9

4313809_1

# TABLE OF AUTHORITIES

**Page(s)**

*Romero v. ABCZ Corp.,*
　2015 WL 2069870 (S.D.N.Y. Apr. 28, 2015).......................................................................7

*Romero v. H.B. Auto. Grp., Inc.,*
　2012 WL 1514810 (S.D.N.Y. May 1, 2012).......................................................................7

*Sanchez v. JMP Ventures, L.L.C.,*
　2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)....................................................................7, 10

*Sipas v. Sammy's Fishbox, Inc.,*
　2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006)...................................................................13

*Stubbs v. McDonald's Corp.,*
　227 F.R.D. 661 (D. Kan. 2004)........................................................................................9

*Taveras v. D & J Real Estate Mgmt. II, LLC,*
　324 F.R.D. 39 (S.D.N.Y. 2018).......................................................................................10

*Zavala v. Wal Mart Stores Inc.,*
　691 F.3d 527 (3d Cir. 2012)...........................................................................................11

**Statutes**

29 U.S.C. § 216(b) ..............................................................................................................6

FLSA..............................................................................1, 2, 3, 4, 6, 7, 9, 16, 18, 19

NYLL § 220.......................................................................................................................15

NYLL § 220(3)(a) & (b) ....................................................................................................15

4313809_1

## PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

Defendants Skanska Koch, Inc., and Skanska USA, Inc. (collectively "Defendants"), respectfully submit this memorandum of law in opposition to the Motion for Conditional Class Certification of the FLSA Collective Action (hereafter "the Instant Motion") filed in this action by Plaintiff, Anthony Cortese (hereafter "Plaintiff").

### *Plaintiff has Failed to Identify Individuals who are Similarly Situated to Him*

Plaintiff's Complaint and Declaration in Support of his Motion for Conditional Class Certification (hereafter "Plaintiff's Declaration") are inconsistent, speculative and wholly fail to establish a factual basis for conditional class certification. Plaintiff alleges that "Defendants hired employees to work in various positions on the Project *in a number of trades* including laborers, crane operators, and ironworkers, *and employees in other similar positions*." (Complaint at ¶ 19) (emphasis added). Plaintiff does not specify what these "number of trades" or "other similar positions" are and completely ignores the fact that even the stated positions (laborers, crane operators and ironworkers) have vastly different job duties, different union representation, different supervisors, and different terms and conditions of employment spelled out in their respective collective bargaining agreements. Plaintiff is a member of the International Union of Operating Engineers, Local 825 (hereafter "Local 825"). (*See* Complaint at ¶ 22). Local 825 does not include laborers or ironworkers among its membership.

Plaintiff alleges that some agreement exists that allowed certain unspecified trades to work on both sides (*i.e.*, New York and New Jersey) of the GWB bridge and be paid their local union rates. (Complaint at ¶ 26). Plaintiff provides no details about this supposed agreement and, to the

4313809_1

extent it exists, it would be inappropriate for a FLSA collective action. (*See* Argument Point II(B), *infra*). Putting aside for the moment the inappropriateness of the agreement as a basis for a FLSA collective claim, Plaintiff asserts that he worked on the New York span of the GWB bridge and received the Local 825 rate of pay, which is less than the New York City prevailing wage rate. (Complaint at ¶¶ 27 & 29). He further alleges that two other crane operators from the New York-based Intentional Union of Operating Engineers, Local 14 (hereafter "Local 14") worked on the New Jersey span and were paid their Local 14 rate of pay. (Complaint at ¶ 30). These New York-based crane operators are the only individuals that Plaintiff specifically identifies as working within a different state's territory than their union and, crucially, these individuals were paid a higher rate of pay than what Plaintiff believes they were entitled to. Therefore, the only other specific individuals named by Plaintiff in the lawsuit do not share his FLSA claims to unpaid wages or overtime. Plaintiff, by his own allegations, has identified a "collective" involving one person: himself. No allegations are included in the Complaint that any other specific individual or group of individuals did work on the New York span of the GWB for which they were paid local New Jersey rates.

In his "Collective Action Allegations," Plaintiff provides no specifics as to which employees he believes are similarly situated. He claims that "New Jersey union member employees" were not paid the New York City prevailing wage rate (Complaint at ¶ 47), lumping together an unspecified number of occupations that may be members of an unspecified multitude of New Jersey-based unions that are covered by vastly different collective bargaining agreements. Plaintiff provides no basis for how this unspecified group of individuals are similar in job duties,

terms and conditions of employment, work schedules, supervisors, territorial location of work or amount of overtime work.  Plaintiff baldly asserts that this unspecified group of New Jersey union members are "subject to Defendant's common practices, policies, programs, procedures, protocols and plans" (Complaint at ¶ 50), ignoring that each trade has substantially different terms and conditions of employment that were negotiated by their respective unions.  There is no effort by Plaintiff to elucidate any actual terms and conditions of employment that members of the proposed collective share.

Plaintiff's Declaration is further devoid of any specific allegations as to the commonality or boundary of his proposed collective.  In his Declaration, Plaintiff simply reiterates the vague and conclusory allegations of the Complaint.  (Decl. at ¶¶ 5-7).  While he alleges the he worked on the New York span of the GWB and received his Local 825 rate of pay (Decl. at ¶¶ 8-10), he fails to identify any other individual or group of individuals that were treated similarly.  His Declaration spends a considerable amount of time outlining retaliatory acts that he claims being subjected to for his complaints regarding pay.  (Decl. at ¶¶ 19-23).  Plaintiff, however, identifies no other individuals or groups of individuals who were treated in the same retaliatory manner.  Yet again, Plaintiff has identified a collective of one, and has failed to identify a single other employee of Defendants who was treated in the same manner.

### Plaintiff has Failed to Identify any FLSA Claims at All Much Less Claims that are Common to any Potential Group

Plaintiff's legal theories are intentionally vague and conclusory, so that he can gloss over the fact that there is no commonality in the legal claims between the members of his proposed collective.  Plaintiff, in fact, fails to allege the existence of *any* entitlement to a higher prevailing

4313809_1

wage rate in his Complaint or Declaration.  He proposes various theories that fail as a matter of law or require individualized assessment.  Plaintiff alleges that "it was ultimately agreed by the PANY, Skanska and the various union representatives that there would be no jurisdictional state 'boundary' line on the Project span regarding union employment."  (Complaint at ¶ 24).  To say nothing of the fact that Plaintiff has offered exactly zero evidence that such an agreement exists, his Complaint does not allege which "union representatives" or "union employment" was involved in the agreement.  Is Plaintiff alleging that his union (*i.e.*, Local 825) entered into this agreement with Skanska and the Port Authority?  Is Plaintiff alleging that every union involved in the GWB bridge project signed on to this agreement?  Plaintiff provides no specifics as to this agreement and we are all left guessing as to which workers were covered.

It is also entirely unclear whether Plaintiff believes he is entitled to automatic application of a statutory state or federal prevailing wage law.  As argued in Defendants' pending Motion to Dismiss, the Port Authority is not subject to statutory prevailing wage laws.  Second, Plaintiff alludes to third-party beneficiary contractual entitlement to a higher wage.  Third-party beneficiary claims are not a proper basis for FLSA collective actions.  Moreover, the proposed collective would include members from various different unions who are subject to vastly different collective bargaining agreements and various other agreements between the union, the Port Authority and Skanska.  Assuming that any such agreements actually exist regarding the wage rates, they would likely vary greatly between the different occupations and unions that Plaintiff seeks to lump into one collective, making their legal claims sufficiently dissimilar to justify collective adjudication.

Third, Plaintiff's Declaration includes hearsay text messages from a third-party who is not an employee of the Port Authority, a union or Defendants.  (Decl. at ¶¶ 16-18 & Exhibit A).  These text messages are wholly insufficient to establish entitlement to statutory or contractual prevailing wages.  Even if the text messages were actionable – and they are not – it would require analysis in the context of each occupation and union agreement.  One of the text messages, in fact, highlights this point.  (*See* Text Message dated 5/10/19 at 2:16 p.m.) ("[y]ou have a union dispute and your Local 825 BA is not doing his job apparently").  Therefore, the only piece of evidence Plaintiff has provided as evidentiary support of his legal theory relays that this is an issue to work out with his specific union.  This further shows that it would be improper to certify a collective of workers from different unions.  Plaintiff has not alleged any commonality of legal relief for the proposed collective.

### *Plaintiff's Proposed Notice is Fatally Inconsistent, Confusing and Overbroad and, Therefore, Should Not be Sent*

Plaintiff's proposed Notice of Lawsuit with Opportunity to Join (hereafter "Proposed Notice") further muddies the water of the proposed collective.  (*See* Exhibit F to the Declaration of Michael H. Ansell, Esq.).  The Proposed Notice is directed to "ALL PRESENT AND FORMER ALL PERSONS WHO ARE NEW JERSEY UNION MEMBERS EMPLOYED BY SKANSKA USA INC. AND/OR SKANSKA KOCH, INC. […] ON THE GEORGE WASHINGTON BRIDGE REHABILITATION AND UPGRADE PROJECT […] AT ANY TIME BETWEEN OCTOBER 1, 2017 AND THE PRESENT."  (*Id*. at pg. 1) (caps in original) (sic).  The Proposed Notice then confusingly "inform[s] you that a misclassification lawsuit exists that you may join." (*Id*.).  Later in the Proposed Notice, under the "Statute of Limitations" section, it states that "you may be able

to recover money damages if you were improperly misclassified as an independent contractor for three years prior to the date you file your 'Plaintiff Consent Form.'" (*Id*. at pg. 3). However, the Plaintiff's Consent Form asks an individual to confirm that "[d]uring the past three years, there were occasions when I worked for Skanska and did not receive proper compensation for all my overtime hours worked." (*Id*. at pg. 5).

The Proposed Notice is contradictory, confusing and inconsistent. A lay person reading the Proposed Notice would, understandably, be unable to determine whether they should join the lawsuit. This is Plaintiff's clear purpose: to bring a mass of employees into the lawsuit, regardless of whether they are similarly situated, in order to increase his potential award. Plaintiff has done none of the due diligence necessary to establish the propriety of a class. Instead, Plaintiff wants this court to bless his glorified phishing expedition in pursuit of any worker potentially dissatisfied with Defendants. This is not the purpose of a FLSA collective action, and his application for conditional collective certification should be denied until Plaintiff is able to articulate a valid group of individuals with common legal and factual claims. Simply put, Plaintiff has failed to identify any individuals that are similarly situated with regard to their legal or factual issues and the Proposed Notice only serves to highlight these inconsistencies and discrepancies.

## STANDARD TO CERTIFY A FLSA COLLECTIVE ACTION

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether the court should certify an FLSA case as a collective action under 29 U.S.C. § 216(b). *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-555 (2d Cir. 2010). This process requires an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage"

4313809_1

and again after discovery is fundamentally complete.  *See McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 442 (S.D.N.Y. 2012).  At the first stage, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers*, 624 F.3d at 555.  At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs."  *Id.*  If the court concludes that they are not, the action may be "de-certified."  *Id.* at 555.

During the first stage, the evidentiary standard is lenient and Plaintiffs need only "make a modest factual showing that [they] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA]."  *Romero v. ABCZ Corp.*, 2015 WL 2069870, at *1 (S.D.N.Y. Apr. 28, 2015) (citing *Myers*, 624 F.3d at 555); *see also Mata v. Footbridge, LLC*, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015); *Guaman v. 5 M Corp.*, , 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013).  That being said, "certification is <u>not automatic</u>."  *Romero v. H.B. Auto. Grp., Inc.*, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (emphasis added).  Although Plaintiffs' burden of proof is low, "<u>it is not non-existent</u>."  *Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (emphasis added).

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF HAS NOT MET HIS BURDEN TO CONDITIONALLY CERTIFY A COLLECTIVE

Plaintiff's Complaint and the Instant Motion are devoid of any details regarding the propriety of an appropriate collective. Plaintiff has not identified a single additional individual that may be similarly situated to him as to the legal or factual issues alleged. Instead, Plaintiff relies on conjecture and broad generalizations in an effort to gloss over whether conditional collective certification is appropriate. In reality, Plaintiff's claims are unique and do not lend themselves to collective action processing. This court should not allow the sweeping collective that Plaintiff has proposed, as it does not meet the legal standard for certification and it would severely complicate adjudication.

Plaintiff's proposed class would encourage judicial inefficiency and cause this court to hold multiple separate trials to parse out facts that are wildly different for each proposed class member. Each member of Plaintiff's proposed class would have different terms and conditions of employment stemming from different collective bargaining agreements, different supervisors, different schedules and overtime procedures, different job descriptions and would require painstakingly-individualized factual analyses regarding their precise location at certain hours of each day they worked at the GWB. Ignoring for the moment how Plaintiff could prove these exact coordinates, certification of the collective would involve lengthy, individualized trials for each employee who would share little to no factual similarities with any other collective member.

4313809_1

This is not the purpose of a FLSA collective action.  Plaintiff's application for conditional class certification should be denied at this time without prejudice, allowing Plaintiff the ability to renew his application if and when he has sufficient information to identify a coherent class that may be appropriate for the collective adjudication of common legal and factual issues.

### A.   Plaintiff has failed to sufficiently identify any individuals or groups of individuals that are similarly situated to him.

Plaintiff's overbroad description of the collective glosses over the vast differences in each member's factual issues.  The "modest factual showing" required for conditional certification "cannot be satisfied simply by unsupported assertions."  *Myers*, 624 F.3d at 555; *see also Ikikhueme v. CulinArt, Inc.*, No. 13 CIV. 293 JMF, 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (denying conditional certification where plaintiff merely claims that it was his understanding that other Sous Chef employees had similar duties and responsibilities, stating that this kind of "unsupported allegation" that "cannot satisfy a plaintiff's burden at the preliminary certification stage"); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 357 (E.D.N.Y. 2008) (granting conditional certification only as to location where plaintiffs worked because allegations about conditions at other locations were based on hearsay statements); *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 666 (D. Kan. 2004) (denying conditional certification where plaintiff failed to provide more than his own speculative allegations).

Rather, Plaintiff must offer "actual evidence of a factual nexus" between his own experience and the experiences of those she claims as "similarly situated," rather than "mere conclusory allegations."  *Flores v. Osaka Health SPA, Inc.*, 2006 WL 695675, at *2 (S.D.N.Y. Mar. 16, 2006) (denying conditional certification inasmuch as plaintiff provided only board conclusory

4313809_1

allegations which offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated [plaintiff] and the way they may have compensated other employees during the relevant time period").

Courts in this Circuit have regularly denied motions for conditional certification because the plaintiffs' allegations were too conclusory to demonstrate that the members of the proposed collective were "similarly situated." *Taveras v. D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (denying conditional certification because plaintiffs' allegations were too conclusory to demonstrate that porters and superintendents at locations other than where Plaintiffs worked are or may be "similarly situated" given that plaintiffs failed to identify names or job titles of any other worker at another location, nor did they state specifics on conversations or explain how they had the opportunity to observe the regular work schedules of employees at other locations); *Sanchez*, 2014 WL 465542, at *2 (denying conditional certification where plaintiff merely provided "a list of generalized allegations that have been molded into a declaration which reads similarly to the complaint"). "[W]here the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted." *Flores*, 2006 WL 695675, at *3.

Likewise, courts have regularly denied conditional certification where plaintiffs failed to demonstrate that employees whose working conditions differed from theirs were "similarly situated." *See Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 451 (S.D.N.Y. 2013) (holding that plaintiff failed to make a sufficient showing for preliminary certification of a collective action which included himself, a kitchen staff member, and non-kitchen staff members,

who were, unlike plaintiff paid at a hourly rate); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at *5 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification where plaintiff failed to "meet the modest factual showing required by the courts when plaintiff attempts to impute her own limited experience to a nationwide class" and where the "minimal evidence fails to justify the size and scope of Plaintiff's requested class certification"); *see also Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012) (upholding denial of final certification where putative class members worked in 180 different stores in 33 states for 70 different contractors and subcontractors and worked varying hours and for different wages depending on the contractor); *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (denying motion to proceed with collective action where plaintiff failed to point to any company plan or policy to target older employees, nor was plaintiff able to provide more than a mere listing of names to show that the potential plaintiffs were "similarly situated").

Plaintiff has not identified a single individual who is "similarly situated" and, pursuant to the cited cases, this failure is fatal to his application for conditional class certification.  Plaintiff's Complaint broadly refers to "each and every other person who performed work in such construction trades, which include but are not limited to crane operators and other related construction trades, for Defendants and/or other entities controlled by Defendants for the Project" who were not properly paid.  (*See* Complaint at ¶ 52, ECF Doc. No. 1).  Plaintiff seeks to conditionally certify a class of "all present and former persons who are New Jersey union members employed by Skanska USA, Inc. and/or Skanska Koch, Inc. on the George Washington Bridge Rehabilitation and Upgrade Project a/k/a "Restoring the George" at any time between October 1, 2017 and the Present."  (*See*

4313809_1

Exhibit F to the Ansell Decl. at pg. 1).  These descriptions of his proposed collective fail to consider that the workers involved are members of different unions with different governing collective bargaining agreements, different schedules, different supervisors, different job descriptions and different wage rates.  They also fail to distinguish between direct employees of Defendants and employees of Defendants' subcontractors.

Plaintiff's use of the term "construction trades" includes myriad titles, including carpenters, laborers, and ironworkers, among others, all of which are associated with different unions governed by different collective bargaining agreements that impose vastly different terms and conditions of employment, policies and procedures upon their respective members.  The only individuals specifically referenced in Plaintiff's Declaration are New York City union members who were paid the New York City prevailing wage for all of their work, including work done on the New Jersey span of the GWB.  These employees were, by Plaintiff's flawed reasoning, overpaid for their work in New Jersey and, therefore, have no commonality with Plaintiff.

Each and every one of Plaintiff's allegations relate solely to his work and his pay.  Plaintiff identifies himself as a member of the Local 825; however, he fails to identify whether any other employees working on the project were a member of his union.  As a member of a union, Plaintiff's pay is dictated in part by the relevant collective bargaining agreement, to which other proposed collective members may not have been subject to.  Therefore, Plaintiff's conclusory allegations that "all construction trades, including the crane operators, that Defendants employed on the GWB Project were authorized to work anywhere on the GWB Project, regardless of whether the employee

4313809_1

is/was a New Jersey or New York based union member" does nothing to advance his case for conditional certification.

Plaintiff's Declaration, even granting him every favorable inference, provides a factual basis for no more than Plaintiff's allegations regarding himself, a crane operator who was a member of Local 825. Plaintiff does not allege that any other crane operator or member of Local 825 has been paid inappropriately. In *Armstrong v. Weichert Realtors*, WL 1455781, at *3 (D.N.J. May 19, 2006), the District Court denied conditional certification inasmuch as plaintiff failed to make a modest factual showing that a class of "similarly situated" potential plaintiffs exist where, "[a]t best, [plaintiff's] declaration provides a factual basis for inferring that one loan officer — [plaintiff] — in one office was required to work unpaid overtime." In similar fashion, this court cannot certify a collective of only Plaintiff Anthony Cortese.

Compare *Armstrong* to *Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006), in which the eight named plaintiffs worked as parking attendants at a group of lots, had the same primary responsibility, were required to wear the same uniforms, attend the same semi-annual meetings to discuss problems with parking operations, answer to the same supervisors, received no hourly wages (being compensated solely through tips), and were required to pay defendants $5.00 per shift, out of said tips. The Plaintiffs in *Sipas* also alleged that there were approximately seventy-five other individuals who worked in the same capacity, as parking attendants at the identified lots during the same time period. *Id.* The plaintiffs in *Sipas* provided a sufficient showing that there were "similarly situated" individuals to pass the Court's muster for conditional certification.

4313809_1

13

By contrast, Plaintiff in the instant matter has offered no such factual showing. Plaintiff's attempt is comparable to the plaintiff in *Armstrong* who, at best, provided a factual basis that he alone was paid improperly. This requires denial of the conditional class certification. Your Honor has, in fact, considered similar cases in the past and denied applications for conditional class certification. For example, in *Barfield v. New York City Health & Hosps. Corp.*, Your Honor denied conditional certification where the plaintiff's allegation that other nurses were not paid overtime was based on "limited anecdotal hearsay." 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005).

Plaintiff has not met his burden to justify a conditional collective certification. Plaintiff's Complaint and Declaration are devoid of any explanation as to how the proposed collective are similarly situated in terms of their job duties, union representation, supervisors, terms and conditions of employment, collective bargaining agreements, location of work, equipment used, scheduling or overtime. Plaintiff instead relies on speculation, hearsay and unsupported assumptions in alleging that other individuals or groups of individuals must exist with similar claims. This type of sloppy, incoherent guesswork is not sufficient to meet even the more lenient standard for conditional certification of a collective. Plaintiff has only alleged that he was entitled to a higher rate of pay for work he performed on the New York span of the GWB and has failed to provide one iota of evidence that a single other individual has been treated in similar fashion. Plaintiff provided no supporting affidavits of other affected employees and has otherwise failed to identify any individuals who worked on the New York span of the GWB and were paid wages based on their New Jersey-based union agreements. This is wholly insufficient to support an application for conditional collective certification.

4313809_1

**B.     There is no commonality of the legal claims within Plaintiff's proposed collective.**

The various legal theories advanced by the Plaintiff further highlight the dissimilarities of his proposed collective.   Plaintiff has stated entitlement to relief in intentionally vague and conclusory terms, and has provided no common or consistent legal bases for relief under the law. To the extent Plaintiff has offered any cognizable legal theory – and Defendants do not believe he has – it would require individualized assessments for each member of the proposed collective.

Plaintiff seems to argue in his Complaint that he was statutorily entitled to be paid New York state prevailing wages.   As Paragraph 29 of his Complaint, he states that NYLL § 220 mandated that he be paid the "New York City prevailing wage for crane operators."  He also cites NYLL § 220(3)(a) & (b), regarding the mandatory nature of the prevailing rate of wages and supplements for public works projects.   (Complaint at ¶¶ 31-33).   Plaintiff, however, misunderstands the unique status of the Port Authority as a bi-state entity.  As argued in Defendants' pending Motion to Dismiss, the Port Authority is not subject to statutory prevailing wage laws. Therefore, his claim that he is similarly situated to the members of his proposed collective on the basis of statutorily-mandated prevailing wage laws is incorrect.  There is, simply put, no automatic entitlement to prevailing wages for work at the Port Authority.  His claim, and any of his proposed collective, fails as a matter of law.

Plaintiff then pivots to a contractual theory of entitlement to prevailing wages through third-party beneficiary liability.  At Paragraphs 35-36 of the Complaint, Plaintiff argues that Defendants and the Port Authority agreed to pay prevailing wages and, therefore, he and his proposed collective, as third-party beneficiaries, can enforce the benefits of that contract.  Here again,

4313809_1

Plaintiff misunderstands the law regarding FLSA and FLSA collective actions. As discussed in Defendants' motion to dismiss, FLSA claims preempt state common law claims such as breach of contract. (*See* Defendants' Motion to Dismiss at Argument Point II). Therefore, it is not possible to proceed on a FLSA collective basis for a breach of contract claim.

Assuming Plaintiff believes that any other agreements exist between Defendants, the Port Authority and his union, Local 825, or the other unions representing members of his proposed collective, they would be similarly-barred as proceeding on a FLSA collective basis. Even if they were allowed, each union's separate agreements with Defendants and the Port Authority would require individualized legal analysis of the various agreements and course of conduct between the parties. Plaintiff's proposed collective seeks to include various occupations represented by a multitude of unions governed by vastly different collective bargaining or other agreements between the unions, Port Authority and Defendants. Assuming that any agreements exist governing the wage rates, the legal bases of relief would vary greatly between the different occupations and unions that Plaintiff seeks to lump into one collective.

Although not contained in his Complaint, Plaintiff introduces for the first time with his Instant Motion a series of text messages between Plaintiff and Eric Gallowitz of Ruzow & Associates, Inc. (*See* Plaintiff's Decl. at ¶¶ 16-18 & Exhibit A). Plaintiff describes Ruzow & Associates as the Port Authority's "third party payroll administrator." (*Id*. at ¶ 16). This is factually incorrect. A review of Ruzow & Associates' website indicates that they specialize in "Compliance Consulting and Integrity Monitoring," not payroll administration.

4313809_1

Regardless of Ruzow & Associates' status to the Port Authority, it is clear that the text messages offered by Plaintiff are inadmissible hearsay that also have no probative value.  As Mr. Gallowitz is not an employee of the Port Authority, any union or Defendants, he has no authority to interpret the alleged agreements that Plaintiff's claim to exist.  To the extent Mr. Gallowitz is providing a legal interpretation regarding the automatic, statutory applicability of prevailing wage laws, he is simply incorrect, for the reasons stated above and the arguments in Defendants' pending Motion to Dismiss.

The text messages certainly do not establish a common legal basis for members of Plaintiff's proposed class.  In fact, they highlight the individualized nature of any legal claims for relief.  Even if the text messages were actionable – and they are not – they would require analysis in the context of each occupation and union agreement.  One of the text messages emphasizes this point.  (*See* Text Message dated 5/10/19 at 2:16 p.m.) ("[y]ou have a union dispute and your Local 825 BA is not doing his job apparently").  Mr. Gallowitz appears to be letting Plaintiff know that he should consult his union so that his individual issues can be resolved.  The text message does not purport to inform Plaintiff that there is some overarching agreement between the Port Authority, Defendants and all the various unions as to the payment of prevailing wages.  Therefore, the only piece of evidence Plaintiff has in support of his alleged entitlement to a higher wage rate in fact memorializes the need for each individual union to sort these issues out separately.  This further shows that it would be improper to certify a collective of workers from different unions.  Regardless of which legal theory, Plaintiff has not alleged any commonality of legal relief for the proposed collective.

4313809_1

**C.**     **Plaintiff's Proposed Notice is not sufficiently tailored to define an appropriate collective and advise potential collective members of their rights.**

Even assuming, *arguendo*, that Plaintiff made a sufficient factual showing that a collective of "similarly situated" individuals exists, his Proposed Notice fails to clearly identify who would be a part of said collective and what the alleged FLSA violations are.  Plaintiff's Notice broadly seeks to conditionally certify a class of "all present and former persons who are New Jersey union members employed by Skanska USA, Inc. and/or Skanska Koch, Inc. on the George Washington Bridge Rehabilitation and Upgrade Project a/k/a 'Restoring the George' at any time between October 1, 2017 and the Present."  Similar to the issues stated above, Plaintiff's Notice fails to specify which union and/or unions are referred to as well as which occupations should be included.

Plaintiff's Proposed Notice goes on to state that "these individuals are owed overtime compensation utilizing the New York City prevailing wage rate as the regular rate of pay for overtime hours they worked on the New York side of the George Washington Bridge span." However, the notice does not provide any further information with respect to which "prevailing wage rates" he is referring to and under which "prevailing wage" law: New Jersey, New York, or Federal?  As stated in Defendants' Motion to Dismiss, those statutes are inapplicable to the Port Authority of New York and New Jersey inasmuch as it is a bi-state agency.

Nor does Plaintiff provide any theory of recovery under FLSA.  In Plaintiff's Complaint, he cites to what he alleges is the "Prevailing Wage Schedule" for New York City for an "Operating Engineer – Steel Erection II" and compares it to what he alleges to be the New Jersey prevailing wages for the same period.  (*See* Complaint at ¶¶ 38-40, ECF Doc. No. 1).  This is presumably the "prevailing wage rate" which Plaintiff alleges applies to him.  However, Plaintiff fails to make the

4313809_1

link as to how the alleged "prevailing wage rate" and any alleges departure from same would lead to a FLSA violation (inasmuch as he alleges they are state and/or city rates).  Nor does Plaintiff make any allegations with respect to the alleged "prevailing wage rate" for any other "similarly situated" individual.  Different "prevailing wage rates" would apply to different employees in the broadly defined "construction trades" whom Plaintiff alleges are "similarly situated" to him. Additionally, as stated above, each of these persons, if union members, would be subject to different contracts and collective bargaining agreements.

Plaintiff's Proposed Notice also makes reference to an alleged "misclassification lawsuit," but his Complaint does not plead any allegations related to misclassification, nor does he identify what the alleged misclassification may be.  Plaintiff's Declaration states that he was one of three unionized crane operators on the project and that the other two crane operators were New York City union members who were paid the New York City prevailing wage for all of their work.  Plaintiff fails to identify any New Jersey union members or occupations who were not paid in the way that he would have preferred to be paid.

In order to be "similarly situated," a member of the proposed collective would need to be a crane operator and a member of Local 825 who worked at least some hours on the New York span of the GWB.  Plaintiff's broad attempt to lump in every member of any New Jersey union in any occupation who worked on the same project is nothing more than a fishing expedition whose sole purpose is to bring in any disaffected employee of Defendants.  The only appropriate collective would be "New Jersey-based crane operators referred by the hiring hall of the International Union of Operating Engineers, Local Union No. 825, who did work on the New York span of

the George Washington Bridge."  Defendants would consent to notice being provided to this group of individuals who, concededly, do share common legal and factual issues.  However, the Proposed Notice, as currently constructed, does not appropriately define a collective that is similarly situated to Plaintiff.  Without the revision indicated above, Defendants' strongly object to the issuance of Plaintiff's Proposed Notice.

## **CONCLUSION**

For the foregoing reasons, Defendants pray that this Court enter an order denying the Plaintiff's Motion for Conditional Class Certification.

Dated:  New York, New York
          February 28, 2020

PECKAR & ABRAMSON, P.C.

By:   */s/ Michael J. P. Schewe*
        _____
        Michael J. P. Schewe, Esq.
        1325 Avenue of the Americas
        10th Floor
        New York, NY  10019
        (212) 382-0909
        *Attorneys for Defendants Skanska Koch, Inc.,*
          *and Skanska USA, Inc.*

4313809_1