```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ANTHONY CORTESE,

 4                    Plaintiff,

 5             v.                          19 CV 11189 (JSR)

 6   SKANSKA USA INC., et al.,

 7                    Defendants.

 8   ------------------------------x
                                         New York, N.Y.
 9                                       March 20, 2020
                                         3:00 p.m.
10
     Before:
11
                         HON. JED S. RAKOFF,
12
                                         District Judge
13
                           APPEARANCES
14
     BRACH EICHLER LLC
15        Attorneys for Plaintiff
     BY:  MICHAEL H. ANSELL
16        HARALAMPO KASOLAS

17   PECKAR & ABRAMSON, P.C.
          Attorneys for Defendants
18   BY:  GREGORY R. BEGG

19

20

21

22

23

24

25
```

1                    (In chambers; via telephone)

2              THE COURT:  This is Judge Rakoff.  Let me just call

3        the case, and then you can announce your appearance again.

4                    This is Cortese v. Skanska Koch and Skanska USA.

5                    Would counsel please identify themselves for the

6        record.

7              MR. ANSELL:  Good afternoon, your Honor.  Michael

8        Ansell of Brach Eichler for the plaintiffs.

9              MR. KASOLAS:  Good afternoon, your Honor.  Bob Kasolas

10       for Brach Eichler, LLC on behalf of plaintiffs.  Thank you for

11       accommodating us by telephone.  Just for the record,

12       Mr. Michael Ansell of our firm will be orally only arguing the

13       motions today on behalf of our client.

14             THE COURT:  This is a motion to dismiss, and then we

15       have a motion for conditional certification.

16                    Let's start with the motion to dismiss.

17             MR. BEGG:  Your Honor, this is Mr. Begg.  I haven't

18       put in my appearance yet.

19             THE COURT:  I'm sorry.  Well, do so.

20             MR. BEGG:  Good afternoon.  This is Gregory Begg of

21       the law firm of Peckar & Abramson on behalf of all

22       defendants -- namely, Skanska Koch, Inc. and Skanska USA, Inc.

23             THE COURT:  So let me hear from you on the motion to

24       dismiss.

25             MR. BEGG:  Very good, your Honor.  Just a brief

1   factual background, and then I'll get into the substance of the

2   motion to dismiss.

3          Plaintiff was hired and worked on the George

4   Washington Bridge project pursuant to a contract between the

5   defendants and the Port Authority of New York and New Jersey to

6   rehab certain parts of the George Washington Bridge.

7          He is an IUOE, which is the International Union of

8   Operating Engineers, member, Local 825, which their

9   jurisdiction is in the New Jersey area.  He worked temporarily

10  on the bridge.

11         The first few weeks on the job, he spent some time

12  working "on the New York side" of the bridge while his crane

13  that he would be operating on the New Jersey side was being set

14  up.

15         He worked for a few months.  He says he worked 4 1/2

16  hours of overtime on the New York side and that for the first

17  few weeks of his employment on the bridge, he worked some time

18  in New York.  He was then continued --

19         THE COURT:  Counsel, forgive me for interrupting, but

20  I've read the brief.  I know the facts.

21         Let's go first to your Count One FLSA overtime, the

22  plaintiff's FLSA overtime claim.  You argue that this matter is

23  controlled by Second Circuit's *Grochowski* case.  But as far as

24  I can tell, that argument was raised for the first time in your

25  reply papers.

1          So why should I take any cognizance of it?

2          MR. BEGG:  Are you speaking with respect to the

3   exhaustion argument?

4          THE COURT:  I'm not talking about exhaustion, and

5   you're on the wrong claims.  I'm talking about the FLSA claim,

6   Count One.

7          You read the complaint.  Yes?

8          MR. BEGG:  Yes.

9          THE COURT:  So the exhaustion claims relate to the

10  later counts.  I'm talking about the first count.

11         What's your argument for dismissal of the first count?

12         MR. BEGG:  All of his claims rely on a mistaken claim,

13  a mistaken issue of law, that he's entitled to New York state

14  statutory prevailing wages under Section 220 of the New York

15  state labor law.  All of his claims are continued upon on that

16  mistaken proposition of the law.

17         THE COURT:  Excuse me.

18         Is not the first claim a federal claim under federal

19  law?  Count One.

20         MR. BEGG:  His first claim is for FLSA overtime as a

21  collective action.

22         THE COURT:  So that's not a state law claim at all.

23         MR. BEGG:  No.

24         THE COURT:  And it's not controlled by state law.

25         MR. BEGG:  That's correct.

1          THE COURT:  So I repeat.  Excuse me.  I repeat my

2     question.

3          What is your argument for dismissing Count One?

4          MR. BEGG:  Okay.  FLSA provides for two things:

5     Minimum wage for your regular hours worked or overtime at your

6     regular rate wage.  He is not alleging that he was not paid

7     federal minimum wage for regulars of work.

8          THE COURT:  That argument is not based on the

9     statutory language but, rather, on the interpretation of the

10    statutory language in the *Grochowski* case from the Second

11    Circuit.

12         MR. BEGG:  Okay.  I think I'm starting to see where

13    you're going.  Okay.

14         THE COURT:  Which you only raised in your reply brief,

15    as far as I can tell.

16         MR. BEGG:  Well, your Honor, if you read his pleadings

17    and his briefs, no.  I don't think that's a correct statement,

18    but it wasn't clear entirely what his theories are.  They're

19    rather confused, in my view.

20         THE COURT:  I think his theory problem is -- although

21    I don't think he was given the opportunity to reply, but if he

22    wants to, I will give him that opportunity.

23         I think his reply is based on a bunch of district

24    court cases that have interpreted the *Grochowski* case

25    differently from the way you interpret it.  And I'm referring,

1    for example, to *Sobczak v. AWL Industries*, 540 F. Supp. 2d 354,

2    a decision from Judge Cogan in the Eastern District New York in

3    2007.

4            It's also been adopted by a number of other district

5    courts, including Judge Daniels of the Southern District of New

6    York in *Custodio v. American Chain Link & Construction, Inc.*

7    reported at 2014 WL 116147 (S.D.N.Y. Jan. 13, 2014).

8            And those cases distinguish *Grochowski* on the grounds

9    that it only dealt with a federal public works project and

10   therefore didn't raise the issue that's really raised by the

11   first claim here, despite some broad language that might be

12   read otherwise.

13           So of course if you had raised this in your opening

14   brief, then your adversary could have cited those cases in his

15   answering brief and you could have responded in your reply

16   brief.  But in any event, I don't think you have any other

17   ground for dismissing the first cause of action but the

18   *Grochowski* case.

19           MR. BEGG:  I must confess I would appreciate it if

20   your Honor would enlighten me.  I'm at a loss to understand

21   what precisely you're saying was not argued and where it should

22   have been argued, and I thought our briefs were clear.  But

23   okay.

24           THE COURT:  I don't have the briefs right in front of

25   me now.  But read me in your opening brief where you make an

1     argument for the dismissal of the federal claim in Count One.

2              MR. BEGG:  It's argued entirely throughout all of our

3     papers that FLSA provides certain remedies only that he does

4     not allege violations of; that he does not allege that he

5     was -- his only allegation -- we're on a motion to dismiss

6     certain claims and a request for conditional certification

7     regarding certain claims.

8              His claim is that he wants to assert a FLSA collective

9     action.  He admits that FLSA in this context would only

10    provide -- as it turns out through the briefing, FLSA would

11    only provide him perhaps with the remedy for overtime claims at

12    what he says should have been his wage, the New York state

13    prevailing wage.

14             He admits that FLSA, as far as straight time is

15    concerned, covers -- he would only be entitled to recover

16    regular wages, regulars hours at federal minimum wage.  That's

17    the limit of FLSA.  He agrees with that.  He says, all I'm

18    asking for under FLSA is overtime compensation.

19             THE COURT:  I agree with that so far.

20             So what is it that you say precludes his claim under

21    FLSA for overtime?

22             MR. BEGG:  Because with respect to overtime in the

23    cases that are cited in our briefs, FLSA is interpreted to

24    mean, when you're talking about overtime, you get overtime at

25    your regular rate, meaning the rate you were actually paid.

1    FLSA does not entitle you to say, I'm supposed to get overtime

2    at prevailing wage rates which I didn't get.  That is a

3    different statutory scheme.

4           He agrees that for all the time that he worked

5    overtime, he was paid time and a half of the wage he was

6    regularly receiving for his straight-time hours, and the bulk

7    of those far exceed minimum wage.  So there is no FLSA claim.

8           And alas, two things.  He says my actual wage wasn't

9    what I got paid under my contract, my collective bargaining

10   agreement.  My actual wage should have been what I was entitled

11   to when I worked in New York under New York prevailing wage

12   law.

13          First, doesn't FLSA allow you to do that.  FLSA says

14   you can get time and a half of what your employer paid you.

15   That's all.  We did that.  And he admits, I got time and a half

16   of what my employer paid me, which is what he was entitled to

17   under his collective bargaining agreement with the operating

18   engineers.

19          He's saying that that was short because there is some

20   other law, New York state prevailing wage law under which I

21   should have gotten a higher regular wage.  And it is abundantly

22   clear that New York state prevailing wage law does not apply to

23   this job, and the cases are cited in the brief, including a

24   New York State Court of Appeals case.

25          THE COURT:  I agree with you that if he's not entitled

1    to the New York state prevailing wage for the period of time

2    that he worked in New York, then the FLSA claim would also

3    fall.

4         But assuming, for the sake of argument, that he is

5    entitled to New York prevailing wage at the New York rate for

6    the time that he worked in the state of New York, then your

7    argument for dismissing Count One comes down to your argument

8    based on what you take to be the statutory interpretation of

9    Section 207(a)(1) of FLSA.

10        And what I'm suggesting to you is that while there is

11   language in the Second Circuit favorable to your

12   interpretation, the case that held that or said that -- maybe

13   it wasn't necessarily a holding.  It was, at most, an

14   alternative holding -- has been rejected or, really more

15   properly, very narrowly limited by subsequent district court

16   cases, including cases in both the Southern District of New

17   York and the Eastern District of New York.

18        So that's the reason that I said ten minutes ago that

19   the *Grochowski* case, despite its broad language, really only

20   applies to federal projects because there would otherwise be a

21   runaround of the Davis-Bacon Act and therefore it does not

22   apply to FLSA claims based on state projects.

23        MR. BEGG:  Okay.

24        THE COURT:  Now what I'm suggesting is that none of

25   this was really captured in the briefs, and we'll probably need

1   to have further briefing because it looks to me like that's an

2   interesting and close question and one not resolvable on the

3   present state of the briefs.

4           MR. BEGG:  I think that would be a fair statement.  If

5   you're focusing on that particular aspect, I don't know that

6   either of us focused on that.

7           THE COURT:  I don't think you had any other ground for

8   dismissing Count One, other than your overall ground that he's

9   not entitled to New York wages, period, under any analysis.

10  And I understand that claim.  So let's turn to that.

11          So that relates to Counts Two through Four which are

12  all wage and overtime claims brought under New York law.  The

13  first argument that I thought you were raising -- and you

14  started to raise it before, but I interrupted you -- was a

15  failure to exhaust.  And that may be a good argument, or it may

16  not.  But I don't see that that was raised until your reply

17  brief.

18          MR. BEGG:  Your Honor, the argument regarding New York

19  Labor Law is simply it does not apply if it were to apply,

20  period.  And I think that's clear.

21          THE COURT:  I understand.

22          Did you not raise in your reply brief and also in your

23  oral argument about ten minutes ago that you had an alternative

24  argument, that of a failure to exhaust?

25          MR. BEGG:  Correct.  But first of all, that's not

1   something you could possibly waive.  It's just simply if you

2   have a New York state waiver law claim --

3          THE COURT:  It's not a question of waiver.  It's a

4   question of briefing.  If you don't raise an argument until

5   your reply brief, I'm not saying you lose that argument.  I'm

6   just saying we have to give your adversary a chance to brief it

7   in response.

8          MR. BEGG:  Certainly.  I don't disagree with that,

9   your Honor.  My position on that is if he had a claim, which he

10  does not, by statute, the only way to remediate that would be

11  by exhaustion.  And I did say he sent a letter saying, well,

12  you hadn't raised that.  I sent a letter saying we'd be happy

13  to have him fully brief that.

14         THE COURT:  So we'll set a time for that at the end of

15  this argument.

16         Okay.  Now turning to the argument that you're most

17  relying on, which is that the New York state prevailing wage

18  law does not apply to the work he performed in New York.  Let

19  me hear from you on that.

20         MR. BEGG:  We assert *Agesen*, the New York State Court

21  of Appeals case that says that prevailing wage law does not

22  apply to the Port Authority of New York and New Jersey.

23         THE COURT:  So his response to that is that these are

24  private contractors.  They contracted with the Port Authority,

25  but the mere fact that they contracted with the Port Authority

1    doesn't put them in the same position as those cases where it

2    was the Port Authority that was being sued.  Here, it's private

3    contractors.

4         MR. BEGG:  Yes.  True.  I understand.  We point out in

5    our brief that first of all, this concept has been applied to

6    not just prevailing wage law but to an assortment of other

7    labor and employment laws.

8         And it has been held that they do not apply to the

9    Port Authority vis-à-vis its direct employees, as well as the

10   employees of its agents or subcontractors.  And at page 3 of

11   our reply brief, we cover the cases on those points, in

12   particular, the *Goodman* case's.

13        THE COURT:  So the *Goodman* case is an interesting

14   case.  Of course none of these district court cases are binding

15   on me, but I certainly want to look at them for their

16   persuasive authority, and the late Judge Sweet was one of the

17   very great judges of this court.

18        But in *Goodman*, Judge Sweet basically held that the

19   plaintiff's claim against the Port Authority was subject to the

20   180-day limitations period for government agencies rather than

21   the 300-day limitations period for other defendants.

22        And the court rejected that by saying:  "The 180-day

23   limitations period applies to Port Authority by virtue of its

24   own status as a government agency and does not depend on the

25   charging party's status."

1          But that reasoning seems to me to be inapplicable here

2    because the Port Authority is not a defendant here.   The

3    defendants here are the two private contractors.

4          I thought, frankly, a better case for you was *People*

5    *v. Rodriguez*, which I want to discuss with your adversary when

6    we get to him.  But I'm not sure that *Goodman* is really all

7    that much on point.

8          MR. BEGG:  Well, I also rely on *People v. Rodriguez* on

9    page 3.

10          THE COURT:  Yes.  I know that.

11          MR. BEGG:  That's not our only argument here, your

12    Honor.

13          THE COURT:  Go ahead.

14          MR. BEGG:  There are two tests that apply, as you well

15    know, the internal/external test versus the express intent

16    standard.  The express intent standard is followed in many

17    jurisdictions exclusively.

18          In this jurisdiction it seems that perhaps that's

19    preferred, but the internal/external standard is sometimes

20    looked to.  And I maintain that if you look at that standard as

21    well, why should it be any different.

22          And it is the same as regulating the internal

23    operations of the Port Authority.  The Port Authority is

24    charged with the responsibility of managing and maintaining.  I

25    don't speak for them.  But they do volumes of work, some of

1   which they self-perform but some of which they choose to

2   subcontract.

3        When they do so, they are perhaps no less an employer

4   than if they do so directly.  It is fundamentally integral to

5   those decisions about whether they do it directly or with

6   subcontracts.

7        If you are dictating the terms of what the

8   subcontractors have to do versus what they might do as direct

9   employers, you're affecting their internal and external

10  operations -- excuse me.  Their internal operations

11  necessarily.

12       There is no precedent that holds that New York state

13  prevailing wage law applies to the Port Authority when it

14  performs its work, other than to say the *Agesen* case which that

15  case happened to be involving direct employees.  The conclusion

16  should be same, and the there's no reason for it to be any

17  different.

18       THE COURT:  So moving on --

19       MR. BEGG:  By the way, your Honor, I think that the

20  Port Authority itself, the contracting community and employees,

21  absent state or federal -- other indicia that the prevailing

22  wage law should apply.  I've agreed that prevailing wage

23  doesn't apply, federal or state.

24       And in this case, we're talking about state prevailing

25  wage law.  It would be a monumental reach now to reset and

1   decide, contrary to *Agesen*, that the New York state prevailing

2   wage law set wages and benefits for all the construction work

3   they do.

4           THE COURT:  Counts Five through Seven only come up if

5   the FLSA claim remains, and they raise the question of

6   preemption which I think is a strong argument, but I don't

7   reach it until I decide whether there is an FLSA claim.  I just

8   have one more question for you before we turn to the plaintiff.

9           As far as I could tell, you are not moving to dismiss

10  the retaliation claims, Counts Eight and Nine.

11          MR. BEGG:  No.  Not on the pleadings, your Honor.

12          THE COURT:  Very good.

13          Let me hear from plaintiff's counsel.

14          MR. ANSELL:  Thank you, your Honor.  Again, just for

15  the record, this is Michael Ansell.

16          I think what's interesting is not what Mr. Begg said

17  but what he didn't say and what the defendants continue to

18  completely ignore, the fact that the Port Authority by contrast

19  requires its contractors to comply with prevailing wage laws.

20          And so to the extent all the case law in support of

21  the fact that the prevailing wage doesn't apply to the Port

22  Authority, all the case law cited by the plaintiff, as

23  your Honor mentioned, is essentially irrelevant because those

24  are all claims directed against the Port Authority for internal

25  employees of the Port Authority.

1          What's more significant is that the Port Authority has

2    chosen to adopt and enforce the state prevailing wage law as to

3    its contractors.  Again, the prevailing wage law is not

4    applicable to the agencies.  It's applicable to a contractor

5    who is hired by them.

6          So in order to kind of preempt your Honor's questions

7    or discussions about the *People v. Rodriguez*, that is the

8    difference in that the Port Authority has chosen to apply

9    prevailing wage laws to its contracts.  That is what the

10   defendants here seem to completely miss.

11         THE COURT:  So let me ask you a couple of questions.

12         MR. ANSELL:  Sure.

13         THE COURT:  First, with respect to the FLSA claim

14   which everyone agrees only applies to overtime, if it applies

15   at all, the actual statute says that it requires that overtime

16   be calculated at "1 1/2 times the regular rate at which the

17   employee is employed."  That's from 29 U.S. Code, Section

18   207(a)(1).

19         So your adversary is arguing that the normal regular

20   rate at which he is employed was the New Jersey rate.

21         MR. ANSELL:  So, your Honor, the argument is the

22   regular rate was the rate he was paid, not the rate he was

23   contractually obligated to be paid.  I think that's the big

24   distinction.  I don't want to waive our right to argue that

25   this was improperly raised on reply and should be disregarded

1    by this Court.

2            Your Honor adequately brought up what our position

3    would have been, and that is so that directly addresses that.

4    At page 361, it says the FLSA can only increase, not decrease,

5    amounts to which employees are contractually entitled.

6            It goes on:  "Since the employer cannot insist on the

7    enforcement of contractual pay provisions to escape its FLSA

8    obligations, the court does not see how the employer can avoid

9    its FLSA obligations by breaching its contract. "

10           THE COURT:  You're right on target.  Of course I'm not

11   bound by that decision.  It was in a district court and in the

12   Eastern District at that.  But I agree with you that's the

13   relevant language.

14           I am going to give both sides a chance to submit very

15   short additional briefing on all issues so that we don't get

16   tied up with the question of someone did or did not have a

17   chance to respond.

18           But that brings me to the exhaustion question under

19   the state law claims, and I will give you a chance to put in a

20   written brief on that.

21           But since you knew it was going to come up today, what

22   do you say to that?

23           MR. ANSELL:  Well, your Honor, the distinction is that

24   the Port Authority is essentially acting as the state agency

25   under the statute.  They appointed a fiduciary which is what

1    the language of the exhaustion of remedies provision in the

2    prevailing wage law provides, that you have to file a complaint

3    with the fiduciary, with the appointed fiduciary agent.

4            That in this case was -- I'm sorry.  I have to locate

5    it in the complaint.  So he did complain to the Port

6    Authority's designated administrator and liaison for the

7    project, Eric Gallowitz of Ruzow and Associates.

8            So he did exhaust his administrative remedies by

9    seeking redress by the fiduciary that was appointed by the Port

10   Authority to oversee wage issues on the project.

11           THE COURT:  So you're saying arguably you're not

12   governed by the requirement but, assuming that you are, that

13   you complied with it.

14           MR. ANSELL:  That we complied with it because the

15   court-appointed fiduciary on this project was the third party

16   of pay administrator and liaison that was appointed by the Port

17   Authority.

18           THE COURT:  Now, what do you say, moving right along,

19   to his argument that to the extent I deny his motion on the

20   FLSA claim, that that claim preempts your contract and quasi

21   contract claims in Counts Five, Six, and Seven?

22           MR. ANSELL:  Well, your Honor, as we raised in the

23   brief -- and I'm not sure why there was confusion about this

24   with defendants because our complaint does specifically set

25   forth that the FLSA claim is limited to overtime.

1        So to the extent the FLSA claim is not dismissed and

2   does preempt those common law claims, it does not preempt those

3   common law claims to the extent they seek redress for regular

4   pay.

5        THE COURT:  I understand that argument.  I just want

6   to make sure.

7        Are you saying that if I deny the motion to dismiss on

8   Count One, that you agree that I should then grant the motion

9   to dismiss on Counts Five, Six, and Seven?

10        MR. ANSELL:  Well, the only caveat to that, your

11   Honor -- I'm not saying that the FLSA claims would not preempt

12   overtime claims under the common law.  But I do believe that

13   dismissal at this early stage, even if the FLSA claim were to

14   proceed, is premature.

15        THE COURT:  Why?

16        MR. ANSELL:  Well, your Honor, as we move forward,

17   they may raise additional defenses that would only be

18   applicable to the FLSA statutory claim that wouldn't be

19   applicable to the common law claims.

20        THE COURT:  Of course that's the chance any

21   complainant takes when they face a motion to dismiss.

22        I think I've exhausted the questions I had for you.

23        Is there anything else you wanted to say before I give

24   your adversary a brief rebuttal?

25        MR. ANSELL:  Well, your Honor, again, in addition to

1    the prevailing wage law claims, the statutory claim, there is

2    also the breach of contract claim which is permissible under

3    the prevailing wage law.  The plaintiff has pled that he and

4    the class are intended third-party beneficiaries of the

5    contract between the defendants and the Port Authority which

6    requires payment --

7            THE COURT:  I'm sorry.  I should have made clear.

8    You're absolutely right.  The dismissal, if there were, because

9    of preemption would relate only to the overtime portion of

10   those contract and quasi contract claims, not to the other

11   portion.  I should have made that clear.

12           MR. ANSELL:  Respectfully, your Honor, if your Honor

13   were to find that the prevailing wage statute or that the

14   statute itself wasn't applicable, that doesn't mean that the

15   contract claim or enforcement of the prevailing wage isn't

16   enforceable.

17           So the FLSA claim would still survive anyway because

18   it's contractual and because the wage payment requirement is

19   contractual, as well as we allege statutory.

20           THE COURT:  Okay.

21           MR. ANSELL:  So I think that's sort of a claim that

22   got overlooked by the defendants in a lot of the briefing.  But

23   I just wanted to make sure that the Court is aware that a lot

24   of the arguments which go toward the applicability of the

25   prevailing wage statute, in practical terms, are almost

1    meaningless because of the contract claims based on the

2    prevailing wage requirement.

3         THE COURT:  Okay.  Let me hear briefly from defense

4    counsel, and then we'll turn to the motion for conditional

5    certification.

6         MR. BEGG:  Okay, your Honor.  The first point raised

7    just now by the plaintiffs was the difference between the

8    contractual claim and a statutory claim.

9         The full complaint alleges that by a competently

10   identified contract upon information and belief, the Port

11   Authority has required compliance with the New York state

12   prevailing wage statute.  That's just simply incorrect, alleged

13   upon information and belief.

14        THE COURT:  Do you have the contracts?

15        MR. BEGG:  We're in discovery now.

16        THE COURT:  I'm just asking whether you as the counsel

17   for the --

18        MR. BEGG:  Yes, I do.

19        THE COURT:  So you're representing that they don't

20   contain the clause that he, on information and belief, is

21   alleging.

22        Do I have that right?

23        MR. BEGG:  It does not.  It does not say that at all.

24        THE COURT:  I can consider that on a motion to dismiss

25   it's not a question of just discovery.  It can be considered

1   because the complaint, in effect, references those contracts,

2   even though perhaps in erroneous fashion.

3          So why don't you send me those contracts and send them

4   to your adversary as well.  We'll set dates for all this in a

5   couple of minutes.

6          MR. BEGG:  Let me be fully clear here.  This is a

7   motion to dismiss, not a motion for summary judgment.  The

8   contract does reference federal prevailing rates, but it does

9   not -- again, there's no neither federal nor state statute for

10  a prevailing wage is required here by statute.  It's a question

11  of contract interpretation.

12         The contract clearly does not reference New York state

13  prevailing wage.  It does reference federal Davis-Bacon.  But

14  now it's a question of what did the parties understand.  That's

15  for another round of briefs I suppose.

16         THE COURT:  It is Federal Pleading 101 that if a

17  complaint references a contract, that the Court may then look

18  at the contract in making a decision on a motion to dismiss.

19  So I want to look at the contract.

20         MR. BEGG:  I don't disagree.

21         THE COURT:  That's all I'm saying.

22         MR. BEGG:  I don't disagree.

23         THE COURT:  Okay.  Anything else?

24         MR. BEGG:  I'm just looking at my notes.  They

25  claim -- I suppose that this is for further briefing.  But they

1    claim that by complaining to an entity to which they refer to

2    as a "fiduciary," they exhausted the requirement under New York

3    state prevailing wage law.

4           The party to which they reference -- they call it a

5    third-party payroll administrator.  I do not know the full

6    scope of this entity's authority whatsoever or their role.

7           My understanding is that they do some monitoring of

8    contractual compliance that may include payment of wages.

9    That's all that I know.  But I do not believe that in any way

10   they would have constituted a fiduciary for exhaustion purpose

11   at all.

12          THE COURT:  Let's turn to the motion for conditional

13   certification.  This of course is the plaintiff's motion.  But

14   the defense points out that the plaintiff has not identified a

15   single additional individual that may be similarly situated to

16   the plaintiff.  And the nature of the claims here are pretty

17   individualized.

18          So how can I certify even conditionally a class?

19          MR. ANSELL:  Well, your Honor, I would hate to

20   disagree with you.

21          THE COURT:  You should feel free.  My wife does it

22   every night.

23          MR. ANSELL:  I must point out that the standard for

24   conditional collective action is much different than class

25   certification.

1          THE COURT:  It's a low standard.  I understand.  It's

2     a low standard.

3          MR. ANSELL:  It's a very low standard.  And, your

4     Honor, the question is whether the collective members were

5     subject to the same policy and procedure.

6          We have alleged and the plaintiff has certified and

7     it's set forth in the complaint, both of which are adequate for

8     purposes of conditional collective certification, that there

9     was a wholesale agreement as to all laborers on the project

10    being able to work both sides of the span.

11         That is not always the case on every project.  That

12    was a specific agreement reached on this project, that all

13    laborers could work on both sides of the span.  We have alleged

14    that employees on other types of projects, whether they be

15    ironworkers, were working on the New York City side of the

16    span, emergency-based union members.

17         The policy is the same, regardless of the trade and

18    regardless of the union.  The policy is whether the defendants

19    were paying New Jersey workers the New York City prevailing

20    wage for work that they performed on the New York City side of

21    the bridge span.  That same policy is applicable to every trade

22    and to every union.

23         So the only distinction between trade and union is

24    going to be what their base rate of pay was pursuant to their

25    collective bargaining agreement and what their prevailing wage

1  should have been.

2          It is merely a difference in damages.  No other

3  factual differences exist.  So we cited in our brief ample case

4  law that such distinctions in terms of the job title and

5  responsibilities of an employee are as long as the policy

6  existed as to all, are meaningless for the purposes of

7  collective certification.

8          THE COURT:  All right.  Let me hear from defense

9  counsel.

10          MR. BEGG:  Sure.  Your Honor, I said earlier that the

11  FLSA collective actions section is entitled only to remediation

12  of FLSA violations, and I don't think that remediating an

13  alleged third-party beneficiary contract claim is appropriately

14  done through the collective action section of FLSA.

15          Do you understand what I mean?

16          THE COURT:  Yes.

17          MR. BEGG:  They can't use that section, the collective

18  action section, to enforce a third-party contract.

19          THE COURT:  I hear your argument.  I understand it.

20          MR. BEGG:  There is no commonality alleged or even

21  remotely supported by anything to show that someone else is

22  similarly situated.  They assume that an agreement requires

23  payment of statutory prevailing wages to everyone.  They don't

24  know that.

25          The maximum is also subject to the parties'

1    interpretation and understanding of that agreement.  And that

2    rule may or may not apply to all trades equally.  There may be

3    different rules for different trades.

4           Then each trade has its own collective bargaining

5    agreement with its own work rules that include what they should

6    get paid under their collective bargaining agreement, depending

7    on what time of the day they start, depending what time of the

8    day they end, depending how many hours they worked in a week,

9    depending on whether they showed up for two hours and were sent

10   home.

11          The work rules from trade to trade -- and there are

12   many trades on this job subject to many collective bargaining

13   agreements -- vary widely.  Their place of work and the records

14   that are kept in terms of where they worked, how many hours

15   they worked, what rules applied vary widely.

16          At best, from what I understand, there is one person

17   who worked in New York who was an operating engineer who was a

18   New Jersey union guy, an IUOE crane operator, who worked a

19   little time in New York.

20          He was paid under his collective bargaining agreement.

21   That's one person, and that's Mr. Cortese.  No other operators

22   worked from the New Jersey side into the New York side.

23          Other trades predominantly worked on one side or the

24   other.  If they worked in different places, their rules of

25   engagement would be different.  The application of the

agreement, the construction agreement to those trades, would be

different.  Their supervisors are different.  They have

narrowed to hundreds of individualized cases about who worked

where, when, what work rules apply, what records exist, who

will testify to those.

There is no commonality alleged, much less existing,

between he and anyone else.  His allegations in the complaint

are upon information and belief.  Some New York people worked

in New Jersey.

He does not allege on information and belief that some

people, other than he, worked from New Jersey into New York and

didn't get paid a New York rate.  On reply, he offers an

affidavit from the plaintiff that says, I, plaintiff, spoke to

some New York City ironworkers who told me some New Jersey

ironworkers worked in New York.

And he makes those same allegations, I believe, in the

complaint.  Nowhere does he say that an IUOE 825 member from

New Jersey went to New York and didn't get the New York rate

just like me.  There is no commonality.

Beyond that, at best, that might be an appropriate

class, except that there are no FLSA claims here.  There is no

New York state prevailing wage law claim here.  There is no

FLSA claim here.

Therefore, nothing could be collectivized through

FLSA.  And at best, he might have his own contract claim for

1    wages in New York.  And the best that we can determine, that's

2    worth about 10,000 bucks, if even that.  Double his backpay

3    would be about $10,000.

4         He hasn't worked there since December, and presumably

5    he's working somewhere else.  This is an outrageous attempt to

6    blow up a minor issue into a collective action.

7         THE COURT:  Let me hear finally from plaintiff, and

8    then we'll set a schedule.

9         MR. ANSELL:  Sure, your Honor.  I heard a lot of

10   effort there to cause confusion where there is none.  This is a

11   very simple matter, your Honor, in terms of commonality.

12        Again, as we set forth in our briefs, the collective

13   bargaining agreement cannot waiver or get around statutory

14   rights.  So the collective bargaining agreements are completely

15   irrelevant here.

16        The question is -- and this is a question for

17   everyone -- whether the workers on the project were subject to

18   prevailing wage law, either by statute or by contract; whether

19   the New Jersey workers who worked on the New York City side of

20   this bridge span were paid the New York City prevailing wage

21   rate for that time.

22        Every issue that counsel raised has to do with damages

23   and calculating based on their collective bargaining agreement

24   and based on the applicable prevailing wage rate to them what

25   their causes of damages is.

1           Its commonality was destroyed by the fact that

2   different class members may have different damages.  So then we

3   should just do away with class actions.

4           That's not what is at issue here.  It's a simple

5   factual matter, and it's pled sufficiently, and it is set forth

6   sufficiently in the declaration.  We identified other union

7   workers, other union trades who worked on the New York City of

8   the span, other New Jersey unions like the Laborers Local 472,

9   the Ironworkers Local 11, the Bridge Painters Local 711, and

10  the Operating Engineers Local 825.

11          So this is an attempt to confuse -- who is the

12  supervisor.  What are the work rules.  None of that matters.

13  The only thing that matters is whether the New Jersey workers

14  who worked on the New York City side of the span were paid the

15  New York City prevailing wage rate.

16          I can't imagine it gets more common than that.  Again,

17  we've set forth the simple distinctions in terms of who his

18  supervisor is, what his job title or job responsibilities are

19  do not destroy commonality.  I don't need to go through that.

20  I know your Honor is familiar with the briefs in this matter.

21  So I will leave it at that.

22          THE COURT:  Okay.

23          MR. BEGG:  If I could be heard one more time, your

24  Honor.

25          THE COURT:  Sure.  Go ahead.

1          MR. BEGG:  If you take another trade, for example,

2     they say they want to represent any union people in New Jersey

3     who might have worked in New York.

4          First we have to determine as a matter of contract

5     were they entitled to some prevailing wage rate.  That's a

6     question of interpretation of that contract between the Port

7     Authority and Skanska.  That will require a great deal of

8     discovery and depositions of the parties and so on.

9          The next question would be:  Which of those employees

10    might be exempt from wage-and-hour laws at all.  They have

11    administrative or supervisory, and therefore prevailing wage

12    statutes wouldn't apply.  And therefore, by referencing the

13    contract, the parties would not have intended that those

14    parties be covered because they are otherwise exempt-type

15    people.

16         We'll have to go through that analysis, and that will

17    require an analysis of their job duties and their work hours.

18    Then we would have to get into discovery about what records

19    exist about where they performed their work.  Did they do it in

20    an office.  Did they do it on the New Jersey side of the

21    bridge.  Did they do it on the New York side of the bridge.

22    Did they do it a little bit on each.  Then how much time did

23    they spend.

24         There are likely not records that would determine all

25    of these things.  So there would be discovery, monumental

discovery, about trying to recreate and reconstrue the place of

work.

         I could envision that plaintiffs would seek to

subpoena records from union hiring halls, from employers, not

to mention that some employees are employed by subcontractors

such as Skanska, when we have one guy who worked for a short

period of time, he says, in New York, doesn't work on the job

any more, worked somewhere else in New Jersey, has a very

limited claim himself, and wants to turn this into a class

action on the George Washington Bridge.

         It's a huge individualist reach and is not the kind of

way a case should be litigated.  The collective action section

is designed to create efficiency for the Court.  This will

accomplish the opposite.

         MR. ANSELL:  Your Honor, if I might very quickly,

because this is significant.  Most of the arguments that

counsel just raised are applicable to final class

certification.

         We are at the conditional certification stage.  The

point of notice and of the collective action is not the

efficiencies of the Court or the convenience of the defendant.

It is to put those who may be affected on notice.

         This is especially important, given the recent

information we've learned of Local 11 seeking to have its

members waive and release any claims to prevailing wage for

1    work done on bridges.

2         Now, how that didn't come about as a result of this

3    complaint and how that maybe wasn't put forth to Local 11 as a

4    suggestion by the defendants I don't know.

5         But that is what compels the urgency of conditional

6    certification as this circuit, Judge McMahon's rules, recognize

7    that this is to provide notice to those who may be affected.

8    It is not to ultimately certify the class.

9         So many of the issues that Mr. Begg just raised are

10   proper considerations for the final determination of the class,

11   but it is not relevant at this stage to conditional

12   certification and notice.

13        THE COURT:  I need to at this point cut you off

14   because I have heard an hour's worth of excellent argument from

15   both sides, but all good things must come to an end sometime.

16        MR. BEGG:  Your Honor, could I address the supposed

17   Local 11 waiver only?

18        THE COURT:  If you can do so in about two minutes or

19   less.

20        MR. BEGG:  I can do it in far less time.

21        In their reply, they attached a photograph of a

22   document that says something like ironworkers agree that --

23   that there's an agreement with ironworkers regarding prevailing

24   rates.

25        It doesn't say what prevailing rates.  It doesn't say

1    what job.  It doesn't say what time.  It doesn't say what time,

2    what year, what parties.  It doesn't say who created the

3    document.  It's utter hearsay, beyond pure guesswork, beyond

4    what that document might be relevant to.  It should not even be

5    considered.

6              MR. ANSELL:  Let's not be cute about it, Greg.  It

7    specifically says "bridges."  We're not shooting in the dark

8    here.

9              THE COURT:  Gentlemen, this was not supposed to

10   devolve into a colloquy between counsel.  I get the arguments

11   from both sides.  I understand them.  Now I want to set some

12   dates.

13             First, defense counsel should provide plaintiff's

14   counsel and the Court with the relevant contract or contracts

15   between the Port Authority and the two defendants.

16             Was there one contract or two?

17             MR. BEGG:  Your Honor, there were only two.  The

18   employer is Skanska Koch, Inc.  Skanska USA is a remotely

19   related affiliate, no commonality regarding anything.  So the

20   agreement would be Skanska Koch, Inc. and the Port Authority.

21             THE COURT:  Any reason you can't provide that to the

22   Court and your adversary by next Wednesday?

23             MR. BEGG:  Likely, pending COVID complications.  We're

24   operating remotely as well.  So, yes.  I believe we can do

25   that.

 1        THE COURT:  So that's March 25.  Then I will give the

 2   parties until April 8 -- that's two weeks later -- to each

 3   submit a supplemental briefing on anything you want to address

 4   that's come out today or that you think needs to be brought to

 5   the Court's attention but limited to 15 double-spaced pages per

 6   side and to be submitted simultaneously by close of business on

 7   April 8.

 8        Any problem with that?

 9        MR. ANSELL:  Your Honor, the only thing I wanted to

10   address about the schedule is that the parties, pursuant to the

11   case management order, were to produce documents by February --

12        THE COURT:  I'm going to address that in a second.

13        MR. ANSELL:  Because plaintiffs have done so and

14   defendant hasn't.  Supplemental briefing -- I don't know what

15   supplemental briefing --

16        THE COURT:  This is a motion to dismiss.  So the only

17   things that can be addressed are the law; the complaint; and to

18   the extent it's relevant, the contract that will now be

19   produced.  So those briefs will be submitted by April 8.

20        I will decide both these motions, both the motion to

21   dismiss and the motion for conditional certification, by

22   April 20.  And all proceedings in this case are stayed between

23   now and April 20.

24        And all dates in the case management plan will be

25   automatically extended by 30 days.  And I will send you an

1   order that says all that and gives you the new date and time

2   for the final pretrial conference.

3          Especially in light of the coronavirus problem, I

4   think we should just put this case on hold for 30 days while I

5   decide these motions and have the benefit of your additional

6   briefing, and then we'll move forward.

7          MR. ANSELL:  Your Honor, may I ask a question before

8   we cut and go ahead?

9          THE COURT:  Yes.

10          MR. ANSELL:  Your Honor, my only concern is that, the

11   plaintiff having produced discovery already, I don't disagree

12   with a further stay but that the defendants should have to

13   produce the documents in their possession to date as they were

14   supposed to by February 27.

15          It would be a little unfair for them to sit on our

16   discovery and for us to not have theirs for an extended period.

17          THE COURT:  Let me hear from defense counsel on that.

18          MR. BEGG:  Sure.  One of the requests of course is an

19   electronic search, and the terms are pretty broad.  We

20   collected the documents that are responsive to that request,

21   and we've been sorting through them, and it's produced volumes

22   of information.

23          I do think it would be fair for us to produce the

24   contract and any other correspondence that pertains to the

25   contract and prevailing wages but nothing else.

```
 1              THE COURT:  Here's what I think.  You should do that
 2   by no later than next Wednesday.  You should, notwithstanding
 3   the crisis, continue to sort through the electronic stuff as
 4   best you can and produce those documents by April 21, the day
 5   after my ruling comes down.
 6              MR. BEGG:  If there's anything else by 4-21?  Is that
 7   what you're saying.
 8              THE COURT:  4-21.  Yes.
 9              MR. BEGG:  Can I ask one question?
10              THE COURT:  Yes.
11              MR. BEGG:  Your Honor, on your own you seem to be
12   focused on a couple of precise issues in your own mind.  I
13   wondered if you could indulge us by articulating the issues
14   that you want further briefing on.
15              THE COURT:  Thanks for the good oral argument.  I now
16   think there are five issues I want to look into.
17              MR. BEGG:  Let us know.
18              THE COURT:  I think first there is a very interesting
19   issue with respect to the interpretation of Section 207(a)(1)
20   of FLSA, again recognizing, of course, that only relates to the
21   overtime claim, if any.
22              Second, I think that there is a very interesting issue
23   of to what extent the case law on prevailing wages, vis-à-vis
24   the Port Authority, applies to the situation where you have
25   private contractors.  Thirdly, of course I want to see what the
```

1    contract has to say and whether that affects some of the

2    claims.

3             There are probably other issues that I'm not recalling

4    right this moment, but at least those three for sure are ones

5    that I want to look at.

6             MR. BEGG:  Thank you, your Honor.

7             THE COURT:  So thank you both very much, and I look

8    forward to your further submissions, and I'll conclude the

9    conference call at this time.

10            (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25