```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
ANTHONY CORTESE                    :
                                   :
       Plaintiff,                  :
                                   :        19-cv-11189(JSR)
          -v-                      :
                                   :            OPINION
SKANSKA USA INC. et al.            :
                                   :
       Defendants.                 :
-----------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Anthony Cortese, a crane operator affiliated with a New Jersey-based union local, alleges that he was underpaid by defendants Skanska USA and Skanska Koch for regular-hour and overtime work that he performed on the New York side of the George Washington Bridge. He moves under 29 U.S.C. § 216(b) for conditional certification of a Fair Labor Standards Act (FLSA) collective,[1] and defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss seven of the nine counts of plaintiff's complaint.[2] On April 20, this Court entered a bottom-line order granting in part and denying in part the motion to dismiss and granting the motion for conditional certification. ECF No. 34. This Opinion provides the reasons behind those decisions.

---

[1] Motion for Conditional Certification of FLSA Collective Action, ECF No. 11 (Feb. 14, 2020).

[2] Motion to Dismiss, ECF No. 15 (Feb. 14, 2020).

1

**BACKGROUND**

This is a putative FLSA collective action and Rule 23 class action alleging various wage and overtime violations, as well as breach of contract and unlawful retaliation. Plaintiff Anthony Cortese is a member of the International Union of Operating Engineers, Local 825, based in New Jersey. Compl. ¶ 22, ECF No. 1 (Dec. 6, 2019). He alleges that, for several months in 2019, he was employed by defendants Skanska USA and Skanska Koch as a crane operator on the George Washington Bridge restoration project, which is managed by the Port Authority of New York and New Jersey. Id. ¶¶ 17-21.

During the course of his employment, plaintiff regularly performed work, including overtime work, on both the New Jersey side and the New York side of the span. Id. ¶ 27-28. Plaintiff alleges that many other workers did the same: the project was staffed by union laborers based in both New York and New Jersey, and because of "constructability, practicality and feasibility issues," all of these employees were permitted to work on both sides of the state line. Id. ¶¶ 25-26.

The gravamen of plaintiff's complaint is that he was compensated at the prevailing wage rate set by the federal Davis-Bacon Act for crane operators in New Jersey (a base rate of $54.13 per hour) even for work that he performed on the New York side of the bridge, which, he claims, should have been

2

remunerated at the equivalent New York prevailing wage (and his overtime wages calculated as one-and-a-half times that rate). This would be either the New York City prevailing wage set pursuant to § 220 of the New York Labor Law (NYLL) ($81.54 per hour), or at least the Davis-Bacon Act prevailing wage for New York ($76.43 per hour). Id. ¶¶ 29, 40; see also First Amended Compl. ¶ 37, ECF No. 37 (May 4, 2020).[3]

Plaintiff asserts two bases for his entitlement to the New York prevailing wage for work performed in New York. The first is contractual. Compl. ¶¶ 1, 17, 35-36. The contract between defendants and the Port Authority — which this Court ordered produced following oral argument on March 20, see Order, ECF No. 35 (Mar. 20, 2020) — provides that defendants must compensate

---

[3] As discussed infra, the contract between defendants and the Port Authority is most naturally read to entitle plaintiff to the New York prevailing wage set by the Davis-Bacon Act for work performed in New York. However, in supplemental briefing and then in a First Amended Complaint, see ECF Nos. 28, 37, plaintiff argues that this contract should be read to require the slightly-higher NYLL prevailing wage, as this is the wage that New York-based laborers on the George Washington Bridge project were purportedly paid. The Court need not decide at this stage of the litigation which of these two wages the contract entitles plaintiff to receive, as both are significantly higher than the New Jersey wage he alleges he received, and so a plausible entitlement to either is sufficient to sustain his FLSA and contract claims. The remainder of this discussion therefore elides the distinction between these two prevailing wage schemes. Also, in addition to the base wages noted above, plaintiff also alleges that he was entitled to certain supplemental benefits, see Compl. ¶¶ 33-36, 37-40, which this discussion also omits for the sake of simplicity.

plaintiff at "at least the [Davis-Bacon Act] prevailing rate of wage . . . <u>in the locality in which the [w]ork is being performed</u>." Contract § 52, Ex. D to Supp. Decl. of Gregory Begg, ECF No. 29-2 (Apr. 8, 2020) (emphasis supplied).

The second is statutory. Plaintiff asserts that New York law, specifically, NYLL § 220, entitles laborers on public works projects to receive a particular prevailing wage for work performed in the state. Compl. ¶¶ 18, 31.

These facts, according to plaintiff, give rise to nine causes of action. Count One alleges an overtime violation under FLSA, 29 U.S.C. § 207, claiming that plaintiff was entitled to be compensated for overtime performed on the New York side of the bridge at one-and-a-half times the New York prevailing wage rate, not one-and-a-half times the lower New Jersey rate. Compl. ¶¶ 60-64. This count appears to be predicated on either a contractual or a statutory entitlement to the higher wage.

Next, Counts Two through Four allege that defendants' failure to pay the New York prevailing wage for work performed in New York — both regular and overtime work — violated plaintiff's statutory entitlement under NYLL § 220 to receive a New York prevailing wage.[4] Compl. ¶¶ 65-69; 70-73; 74-78. These

---

[4] More specifically, Count Two is for overtime pay, Count Three is for regular pay, and Count Four is for failure to provide wage statements.

4

counts are predicated on the asserted statutory entitlement to the higher wage.

Counts Five through Seven assert state common law claims, arising under the contract between defendants and the Port Authority, for quantum meruit, unjust enrichment, and breach of contract, alternatively. Compl. ¶¶ 79-84; 85-88; 89-93.

Finally, in Counts Eight and Nine, plaintiff alleges in his individual capacity that defendants unlawfully retaliated against him for raising the issue of his entitlement to a higher wage, in violation of the NYLL and FLSA. Compl. ¶¶ 94-105; 106-116.

## MOTION TO DISMISS

Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss Counts One through Seven of the Complaint. Counts Eight and Nine, the retaliation claims brought by plaintiff in his individual capacity, are not at issue on this motion.

As stated in the Court's order of April 20, the motion is granted in part and denied in part. This Opinion considers plaintiff's claims in a different order than presented in the Complaint, beginning with the NYLL claims.

### I.   Counts Two through Four: The NYLL Claims

Counts Two through Four assert that NYLL § 220(3)(a) entitles plaintiff to the New York prevailing wage for work performed on the New York side of the George Washington Bridge,

5

and thus to one-and-a-half times that amount for such overtime work. These claims are dismissed because plaintiff did not exhaust his administrative remedies as required by the statute.

Sections 220(7) and (8) of the NYLL set forth an administrative scheme for hearing and remedying violations of the statute's prevailing wage scheme. Both the First and Second Departments of the New York Appellate Division have interpreted this language to create an administrative exhaustion requirement before a suit may be filed in court. Pesantez v. Boyle Environmental Servs., Inc., 251 A.D.2d 11, 12 (1st Dept. 1998) ("[A] private right of action for underpayment of wages does not exist under Labor Law § 220 until there has been an administrative determination pursuant to subsection (8) that has either gone unreviewed or been affirmed in the claimants-employees' favor."); Marren v. Ludlam, 14 A.D.3d 667, 669 (2d Dept. 2005) ("[N]o private right of action for the underpayment of wages exists under Labor Law § 220 until an administrative determination in the employee's favor has been made and has gone unreviewed or has been affirmed."); see also Goodman v. Port Auth. of N.Y. and N.J., 850 F. Supp. 2d 363, 875 (S.D.N.Y. 2012) (quoting Pesantez with approval).

Plaintiff's complaint does not allege administrative exhaustion. Following the March 20 oral argument, at which defendant moved to dismiss on this ground, the Court invited

6

plaintiff to further clarify his position in a supplemental brief. Tr. of Oral Argument at 17:18-20, 34:1-7, ECF No. 32 (Mar. 20, 2020). But plaintiff's submission, ECF No. 28 (Apr. 8, 2020), merely asks the Court to excuse the exhaustion requirement on the ground that the statute is ambiguous as to which agency would have heard plaintiff's claim in the context of a Port Authority Project. Id. at 6-7. The Court disagrees. As the George Washington Bridge project was not performed on behalf of a city, the statute clearly contemplates that the New York Commissioner of Labor should have heard plaintiff's claim. See NYLL § 220(5)(e). But even if this were not so, there is no suggestion here that the plaintiff sought exhaustion before the wrong agency; plaintiff simply omitted to do so at all. Counts Two through Four are accordingly dismissed, as plaintiff cannot show that he fulfilled this necessary prerequisite to bringing a claim before this Court.

That might have been the end of the matter. Were it so, the Court would have deemed it unnecessary to reach defendants' second ground for dismissing Counts Two through Four, i.e., that the NYLL does not apply to defendants in their capacity as contractors to the Port Authority, a bistate entity generally "not subject to the unilateral control of any one" state. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 42 (1994). In his first amended complaint, however, see ¶¶ 63-77, ECF No. 37 (May

7

4, 2020), plaintiff made clearer his contention that NYLL violations also arise from plaintiff's <u>contractual</u> entitlement to a higher wage. That is, in plaintiff's view, defendants' failure to pay the contractually-required wage is not only a breach of contract, but also itself a violation of the NYLL's wage and hour provisions. <u>See, e.g.,</u> NYLL §§ 198, 663

In a telephone conference on May 18, 2020, the parties jointly asked the Court to reach this second ground, so as to clarify whether the dismissal rests only on failure to exhaust administrative remedies. To that effect, the Court now rules that it would not have dismissed plaintiff's NYLL counts on the ground that defendants are exempt from this statute's requirements.

It is uncontested that many provisions of the NYLL do not apply to the Port Authority itself. <u>See</u> <u>Goodman v. Port Auth. of N.Y. and N.J.,</u> No. 10-cv-8352 (RWS), 2013 WL 5313427 (S.D.N.Y. Sept. 20, 2013); <u>Agesen v. Catherwood</u>, 26 N.Y.2d 521, 525 (N.Y. 1970); <u>see also</u> <u>Hess</u>, 313 U.S. at 42. As the Supreme Court explained in <u>Hess</u>, 513 U.S. at 42, the Port Authority's immunity from certain state regulations arises from its status as one of a relatively few entities created pursuant to the Compact Clause, U.S. Const. Art. I, Sec. 10, Cl. 3, which "owe their existence to state and federal sovereigns acting cooperatively,"

and thus "lack the tight tie to the people of one State that an instrument of a single State has." Id. at 42.

But this exemption is a narrow one, and defendants here — who are private corporations and thus pure creations of state law — cannot rely on it simply because they perform work pursuant to a contract with the Port Authority.

In arguing otherwise, defendants first cite Goodman, where a plaintiff brought a Title VII hostile work environment claim against the Port Authority as well as his two supervisors, who were employees of a Port Authority contractor.[5] But this case is inapposite. The court there granted summary judgment in favor of defendants. It first noted that plaintiff's claims against the Port Authority were not timely, as the Port Authority was subject to the 180-day limitations period for government agencies, rather than the 300-day limitations period for other defendants. 2013 WL 5313427, at *3. The plaintiff there had argued that he should have fallen under the longer limitations period because he himself was not a Port Authority employee but was rather an external contractor. The court rejected this argument, reasoning that "the 180-day limitations period applies to Port Authority by virtue of its own status as a government

---

[5] Goodman also held that New Jersey's prevailing wage law did not apply to the Port Authority itself, but that section of the opinion says nothing about contractors of the Port Authority. 2013 WL 5313427, at *9.

9

agency, and does not depend on the charging party's status." Id. Concededly, the Goodman court also rejected the Title VII claims against plaintiff's supervisors, but it did so not necessarily on the ground timeliness, but on the merits. Id. at *4-5. That is, the court did not expressly hold that the 180-day limitations period applied to the Port Authority's contractors, and it need not have done so because the issue was effectively moot. Goodman therefore does not establish that the Port Authority's contractors enjoy the exemption from state regulation typically granted to bistate entities.

Defendants next rely on People v. Rodriguez, 454 N.Y.S.2d 796 (Queens Cty. Crim. Ct. 1982), where a lower state court held that a hotel near JFK airport that was "operated . . . in behalf of the Port Authority and as a Lessee of the said Port Authority" was exempt from a criminal summons served by the New York City fire department for failure to maintain emergency lighting. Id. at 797. The court reasoned that the Port Authority's immunity should extend to "property operated by someone in behalf of the Port Authority so long as the use is implementing the functions of the Port Authority." Id. at 798.

Rodriguez would seem to apply to the instant situation. But its holding is not binding on this Court, and this Court finds its reasoning unpersuasive. First, it must be noted that at least one other New York court of similar level has come to the

opposite conclusion from Rodriguez on the same legal issue here referenced. See People v. Anderson, 258 N.Y.S.2d 603 (Kings Cty. Crim. Ct. 1965) (holding that a municipal regulation does apply to a parking lot operated by a lessee on property owned by the Port Authority). Moreover, the reasoning of Rodriguez is inconsistent with that of the U.S. Supreme Court in Hess. Rodriguez suggests that the Port Authority's exemption from state regulation attaches not to the entity but to its functions. But the exemption contemplated in Hess is seemingly more narrow. Hess suggests that the Port Authority is exempt from state regulation because the entity itself is a creation of the Compact Clause, and not just the law of one state. This implies that it is immaterial whether a corporate third party is carrying out functions associated with the Port Authority, as that third party ultimately answers to the state.

Agesen v. Catherwood, 26 N.Y.2d 521, 525 (N.Y. 1970), is not to the contrary. In Agesen, the New York Court of Appeals expressly held that New York's prevailing wage law, NYLL § 220, does not apply to the Port Authority. Defendants read this decision more broadly, that is, to provide that Port Authority projects are not public works projects within the meaning of NYLL § 220(2), and that contractors of the Port Authority thus cannot be required to pay prevailing wages. But even assuming arguendo that this reading is correct, it would exempt

11

contractors only from the prevailing wage statute, NYLL § 220, and not from the more general wage and hour provisions that provide the causes of action for plaintiff's contract-based claims.

The Court accordingly finds no broad exemption from the NYLL for contractors of the Port Authority.

## II.  Count One: The FLSA Claim

Defendants next move to dismiss Count One, which alleges the FLSA overtime violation that forms the basis of plaintiff's putative collective action. The overtime violation claimed here is an atypical one: plaintiff concedes that defendants compensated him for overtime work at one-and-a-half times his regular wage, i.e., $54.13 per hour, the New Jersey prevailing wage for his trade. See Compl. ¶¶ 27-29, 40. But, given his contention that he was entitled to a higher New York prevailing wage for work performed on the New York side of the Bridge, he argues that defendants violated FLSA by failing to calculate his New York overtime pay from the higher base rate. Compl. ¶ 62; see 29 U.S.C. §§ 207, 216(b).[6]

---

[6] Plaintiff's FLSA claim is only for overtime wages. It is clearly established that FLSA provides no cause of action for non-overtime wages above the federal minimum wage.  29 U.S.C. § 206(a)(1); Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003).

As a threshold matter, this cause of action is only viable if plaintiff can allege a plausible entitlement to the higher New York wage for work performed in New York. And for the reasons explained in the previous Section, there is no <u>statutory</u> entitlement under New York law to such a wage.

But plaintiff can plausibly allege a <u>contractual</u> entitlement to such a wage. Section 52 of the contract between defendants and the Port Authority provides that defendants must at least compensate their laborers at the prevailing rate of wage "in the locality in which the [w]ork is being performed." Ex. D to Supp. Decl. of Gregory Begg. The most natural reading of this language is that defendants must compensate plaintiff at the relevant New York prevailing wage for work performed in New York.[7]

Defendants further argue, however, that this FLSA claim is invalid because the statute does not guarantee plaintiff any

---

[7] There is also little doubt that plaintiff is a third-party beneficiary who has the right to sue under this provision. Section 52 of the Contract further provides that this "provision . . . [is] inserted for the benefit of [the] workmen, laborers and mechanics," and that if any contractor or subcontractor "shall pay . . . any such workman, laborer or mechanic less than the rates of wages and supplements above described, such workman, laborer or mechanic shall have a direct right of action against the Contractor or such subcontractor for the difference between the wages and supplements actually paid and those to which he is entitled under this clause." <u>Id.</u>

overtime pay beyond what he admits he received. That is, in defendants' view, the statute only protects an employee's right to receive overtime calculated as "one-and-a-half times the hourly rates actually paid," Grochowski v. Phoenix Const., 318 F.3d 80, 84 (2d Cir. 2003) (emphasis supplied), not one-and-a-half times the hourly rate plaintiff believes he should have been paid. Accordingly, because plaintiff acknowledges that he received time-and-a-half overtime pay, calculated as a multiple of the New Jersey prevailing wage rate, defendants argue that he has no further entitlement under FLSA.

Defendants rely on Grochowski, whose facts superficially resemble those at issue here. In that case, a group of construction workers on a federally-funded public works project raised an FLSA claim, alleging that they had been paid wages less than the federal prevailing wage that they were entitled to, and that their overtime should have been paid at one-and-a-half times that prevailing wage, not one-and-a-half times their actual, lower wage. Id. at 83.

The Second Circuit granted summary judgment to defendants on this claim, noting that FLSA merely requires that overtime be calculated at "one and one-half times the regular rate at which [the employee] is employed," Id. at 87 (quoting 29 U.S.C. § 207(a)(1)), and that the Supreme Court long ago interpreted the phrase "regular rate" as "the hourly rate actually paid the

14

employee for the normal, non-overtime workweek for which he is employed." Id. at 87 (emphasis omitted) (quoting Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).

Grochowski, concededly, is strong authority in defendants' favor. But it is not the final word. Following Grochowski, at least two courts in this Circuit have distinguished that case on the ground that the asserted entitlement to a higher base wage arose under the federal public works prevailing wage statute, the Davis-Bacon Act. See Sobczak v. AWL Industries, Inc., 540 F. Supp. 2d 354 (E.D.N.Y. 2007); Custodio v. Am. Chain Link & Const., Inc., No. 08-cv-7148 (GBD) (HBP), 2014 WL 116147 (S.D.N.Y. Jan. 13, 2014) (adopting the magistrate judge's report and recommendation).

This point is relevant because the Davis-Bacon Act contains an exclusive administrative remedy and has no private cause of action. Grochowski, 318 F.3d at 87. The court in Sobczak accordingly read Grochowski's holding as centrally motivated by "plaintiffs' attempt to use the FLSA to circumvent the procedural requirements of [the Davis-Bacon Act]." Sobczak, 540 F. Supp. 2d at 360 (quoting Grochowski, 318 F.3d at 87). In that case, laborers on a public works project alleged an FLSA claim against their employer, arguing that they had been paid overtime calculated upon a lower base wage than that to which they were entitled under state prevailing wage law. 540 F. Supp. 2d at

15

356. Focusing on the distinction between state prevailing-wage law and the federal Davis-Bacon act, the court declined to follow Grochowski and denied in relevant part the defendant's motion to dismiss the FLSA claim. Id. at 360-61. The Sobczak court further noted that Walling, where the Supreme Court held that the "regular rate" of pay for purposes of an overtime calculation is the "hourly rate actually paid the employee for the normal, non-overtime workweek," 325 U.S. at 424, arose in a situation where an employer had effectively tried to calculate overtime pay based on a contractual rate that was lower than the actual rate. And since the Supreme Court thus held that an employer could not avoid its FLSA overtime obligations by enforcing an employment contract, Sobczak found it nonsensical to read the statute to allow an employer to achieve the same result by breaching that contract to pay employees an "improperly reduced base wage." 540 F. Supp. 2d at 361.

This Court finds Sobczak's reasoning persuasive. The question remains, however, whether Grochowski nonetheless controls this case because plaintiff's asserted prevailing wage entitlement, or at least one theory of it, relates to the Davis-Bacon Act. But here, unlike in Grochowski, the Davis-Bacon Act's prevailing wage scheme allegedly applies as a matter of contract, not by force of statute. The Act's exclusive administrative remedy, the relevance of which undergirded the

Second Circuit's holding in <u>Grochowski</u>, is therefore inapplicable to this plaintiff.

For these reasons, the Court holds that <u>Grochowski</u> does not bar plaintiff's FLSA overtime claim, and the motion to dismiss Count One is accordingly denied.

**III. Counts Five through Seven: The State Common Law Claims**

Finally, in Counts Five through Seven, plaintiff alleges state common law claims for, alternatively, breach of contract, unjust enrichment, and quantum meruit, for both regular and overtime hours worked in New York. Compl. ¶¶ 79-93. Plaintiff's breach of contract allegations are the same as those described above.

Defendants seek to dismiss only as much of these claims as relate to plaintiff's allegations about overtime pay, arguing that such claims are duplicative of plaintiff's cause of action under FLSA. The Court agrees. Although there appears to be no controlling Second Circuit authority, several district courts within this Circuit have held that FLSA preempts state common law claims seeking vindication of the same rights that FLSA protects. <u>See, e.g.</u> <u>Petras v. Johnson</u>, No. 92-cv-8298 (CSH), 1993 WL 228014 (S.D.N.Y. June 22, 1993) (dismissing a state law fraudulent misrepresentation claim for failing to pay overtime that was duplicative of an FLSA § 207 overtime claim in the same lawsuit); <u>DeSilva v. North Shore-Long Island Jewish Health</u>

System, Inc., 770 F. Supp. 2d 497, 530 (E.D.N.Y. 2011) ("[W]here a state common law claim is based upon the same facts as a FLSA cause of action, the duplicative state-law claim is preempted by the FLSA and must be dismissed.").

Here, given the Court's holding above that Count One states a valid FLSA overtime claim, any claim for overtime wages alleged in the contract and quasi-contract claims in Counts Five through Seven would necessarily be duplicative. As in DeSilva, where plaintiff employees alleged FLSA and breach of contract claims for regular and overtime work performed during meal and break times, the common law claims for overtime pay must be dismissed with prejudice. 770 F. Supp. 2d at 530-33. But these claims need not be dismissed insofar as they relate to non-overtime hours, as FLSA does not protect contractual rights to wages above the statutory minimum wage. 29 U.S.C. § 206(a)(1); see Grochowski, 318 F.3d at 87.

### MOTION FOR CONDITIONAL CERTIFICATION

Because the Court denies defendants' motion to dismiss plaintiff's FLSA overtime claim (Count One), the Court must next consider plaintiff's motion for conditional certification of an FLSA collective.

FLSA allows an employee to bring a collective action on behalf of the employee "and other employees similarly situated." 29 U.S.C. § 216(b). The standard for conditional certification

of a collective, in contrast to that for final certification, is quite lenient. At this stage, plaintiff need only "make a modest factual showing that [he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA]." Romero v. ABCZ Corp., No. 14-cv-3653 (AT) (HBP), 2015 WL 2069870, at *1 (S.D.N.Y. Apr. 28, 2015) (citation omitted).

Plaintiff meets this standard, as he alleges, in effect, that all of the New Jersey-based union members who worked on both sides of the bridge are situated similarly to him. The complaint alleges that "all construction trades, including crane operators, employed by Defendants on the GWB Project were authorized to work" on both the New York and the New Jersey sides, Compl. ¶ 26, and that defendants "had a policy to not pay their New Jersey union member employees at one and a half times the New York City prevailing wage rate" for overtime performed in New York, id. ¶ 47. Although the complaint suggests that plaintiff is the only crane operator who was purportedly underpaid, id. ¶¶ 20, 28, plaintiff alleges "upon information and belief" that at least sixty current and former New Jersey union members were improperly denied overtime at the New York rate.[8]

---

[8] Plaintiff also submitted a reply affirmation in support of the motion for conditional certification stating that he is aware,

Although somewhat vague and conclusory as to the identities of these potential opt-in plaintiffs and the union trades that they represent, the Court deems this a sufficient "modest factual showing" of a common policy that similarly disadvantaged a group of potential opt-in plaintiffs. Defendants primarily reply that the potential opt-in plaintiffs are not similarly situated to plaintiff and to each other, as those hailing from different trades are subject to different collective bargaining agreements and different prevailing wage regimes. But this objection is easily dispatched. The essence of the claim — that defendants' contract with the Port Authority guarantees each laborer the prevailing wage associated with his trade for the location in which his work was performed — is the same for every plaintiff. The only conceivably-relevant discovery with respect to each of the opt-in plaintiff will be (1) whether he performed overtime work in New York, and, if so, (2) whether he was compensated at the New York or the New Jersey prevailing wage associated with his trade for such labor. Accepting plaintiff's allegations as true, the Court deems these potential opt-in plaintiffs to be similarly-situated and the victims of a common

---

"through [his] observations and conversations with" specific New Jersey-based coworkers on the George Washington Bridge project that they were also underpaid for work on the New York side of the bridge. Reply Affirmation of Anthony Cortese ¶¶ 2-3, ECF No. 23 (Mar. 6, 2020).

policy, and plaintiff's motion for conditional certification is
accordingly granted.[9]

**CONCLUSION**

For the foregoing reasons, the motion for conditional
certification is granted, and the motion to dismiss is granted
in part and denied in part.

SO ORDERED.

Dated: New York, NY
     May 26, 2020

                             United States District Judge

---

[9] As noted in the Court's bottom-line order, plaintiff's proposed
notice to the potential opt-in class was insufficient insofar as
it suggested a statutory entitlement to the New York prevailing
wage under § 220 of the NYLL. ECF No. 34. In subsequent
communications with the parties, the Court approved a revised
notice, which plaintiff must now mail to all members of the
potential opt-in class by no later than May 29, 2020. See Order,
ECF No. 38 (May 19, 2020).