# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY CORTESE, individually and on behalf of others similarly-situated,<br><br><div align="center">*Plaintiff*,</div><br><div align="center">-vs-</div><br>SKANSKA KOCH, INC.; and SKANSKA USA, INC.;<br><br><div align="center">*Defendants*.</div> | Civil Action No. 1:19-cv-11189-JSR |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas
10th Floor
New York, NY  10019
(212) 382-0909
*Attorneys for Defendants Skanska*
*    Koch, Inc., and Skanska USA, Inc.*

*On the Brief:*

Gregory R. Begg, Esq.
Shannon D. Azzaro, Esq.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

LEGAL ARGUMENT............................................................................................................. 3

POINT I.................................................................................................................................. 3

PLAINTIFF'S WAGE CLAIMS (COUNTS 1 TO 5) ARE PREEMPTED BY FEDERAL
LABOR LAW. ....................................................................................................................... 3

      A.    Plaintiff's Claims are pre-empted by the NLRA under Garmon ............................3

      B.    Plaintiff's Claims are Pre-empted under the LMRA .................................................6

POINT II ................................................................................................................................ 8

PLAINTIFF'S OVERTIME CLAIMS UNDER FLSA (COUNT 1) AND NYLL (COUNT
2) MUST BE DISMISSED BECAUSE HE RECEIVED OVERTIME COMPENSATION
AT HIS ACTUAL BASE RATE WHICH IS ALL THAT THESE LAWS REQUIRE. .............. 8

POINT III .............................................................................................................................. 9

PLAINTIFF'S NYLL ARTICLE 6 CLAIM (COUNT 4) MUST BE DISMISSED
BECAUSE HE FAILS TO SUFFICIENTLY ALLEGE OR PRODUCE EVIDENCE OF
A VIOLATION OF LAW...................................................................................................... 9

POINT IV .............................................................................................................................. 9

PLAINTIFF'S COMMON LAW CLAIMS MUST BE DISMISSED ........................................... 9

A.    Plaintiff Has Failed To Prove A Breach Of The Construction Agreement. ...................... 9

B.    Plaintiff's Claims Of Unjust Enrichment And Quantum Meruit Are Duplicative Of
    His Breach Of Contract Claim And Therefore Must Dismissed. ..................................... 13

POINT V .............................................................................................................................. 14

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
FLSA AND NYLL RETALIATION CLAIMS (COUNTS 8 AND 9) ....................................... 14

      A.    Plaintiff Fails To Establish A Prima Facie Case....................................................15

      i.    Plaintiff Cannot Establish that he Engaged in a Protected Activity ......................15

      ii.    Plaintiff Cannot Establish that he was Subjected to an Adverse Employment
      Action....................................................................................................................17

iii.     Plaintiff Cannot Establish a Causal Connection Between His Alleged Protected Activity and the Alleged Adverse Employment Actions......................20

B.     Defendants' Legitimate, Non-Discriminatory, Non-Retaliatory Reason...............21

C.     Plaintiff Cannot Prove Pretext, i.e. That Skanska Koch's Stated Reasons Are Both False And That Retaliation The True Reason For Its Decisions........................23

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Dep't of Pub. Safety*,
764 F.3d 244 (2d Cir. 2014) ....................................................................................... 23

*Air Transp. Ass'n of Am. v. Prof'l Air Traffic Controllers Org.*,
667 F.2d 316 (2d Cir.1981) ........................................................................................... 5

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985) ................................................................................................... 2, 7

*Barbieri v. United Techs. Corp.*,
255 Conn. 708 (2001) ................................................................................................... 5

*Barrus v. Dick's Sporting Goods, Inc.*,
732 F. Supp. 2d 243 (W.D.N.Y. 2010) ....................................................................... 13

*Bay Ridge Operating Co. v. Aaron*,
334 U.S. 446, 68 S. Ct. 1186, 92 L. Ed. 1502 (1948) .................................................. 8

*Beachum v. AWISCO N.Y.*,
785 F. Supp. 2d 84 (S.D.N.Y. 2011) ........................................................................... 21

*Bldg. Trades Employers' Educ. Ass'n v. McGowan*,
No. 98 CIV. 4998 (MBM), 2001 WL 682740 (S.D.N.Y. June 18, 2001), *rev'd
on other grounds*, 311 F.3d 501 (2d Cir. 2002) .......................................................... 4

*Borzon v. Green*,
778 F. App'x 16 (2d Cir. 2019) .................................................................................. 23

*Brands-Kousaros v. Banco Di Napoli S.P.A.*,
No. 97 CIV. 1673 (DLC), 1997 WL 790748 (S.D.N.Y. Dec. 23, 1997) .................... 16

*Brown v. Sterling Aluminum Prod. Corp.*,
365 F.2d 651 (8th Cir. 1966) ........................................................................................ 7

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ................................................................................................. 17, 18

*Burnette v. Northside Hosp.*,
342 F. Supp. 2d 1128 (N.D. Ga. 2004) ....................................................................... 17

*Cameron v. Cmty. Aid For Retarded Children, Inc.*,
335 F.3d 60 (2d Cir. 2003) ......................................................................................... 24

*Castagna v. Luceno*,
No. 09-CV-9332 CS, 2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011), aff'd, 744
F.3d 254 (2d Cir. 2014) .......................................................................................................... 16

*Clark Cty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001) ............................................................................................................... 21

*Clark-Fitzpatrick Inc. v. Long Island Rail Road Co.*,
70 N.Y.2d 382 (1987) ............................................................................................................ 13

*Copantitla v. Fiskardo Estiatorio, Inc.*,
788 F. Supp. 2d 253 (S.D.N.Y. 2011) .............................................................................. 17, 18

*Dall. Aero., Inc. v. CIS Air Corp.*,
352 F.3d 775 (2d Cir. 2003) ............................................................................................ 11, 12

*Daugherty v. City of El Paso*,
56 F.3d 695 (5th Cir. 1995) .................................................................................................... 20

*DeLuca v. Allied Domecq Quick Serv. Restaurants*,
No. 03-CV-5142(JFB)(AKT), 2006 WL 1662611 (E.D.N.Y. June 13, 2006) ........................ 24

*El Sayed v. Hilton Hotels Corp.*,
627 F.3d 931 (2d Cir. 2010) ............................................................................................ 15, 23

*Epifani v. Johnson*,
65 A.D.3d 224 (2009) ............................................................................................................. 16

*Ethelberth v. Choice Sec. Co.*,
91 F. Supp. 3d 339 (E.D.N.Y. 2015) ........................................................................................ 8

*Galabya v. N.Y. City Bd. of Educ.*,
202 F.3d 636 (2d Cir. 2000) ................................................................................................... 18

*Goldstein v. CIBC World Markets Corp.*,
6 A.D.3d 295 (1st Dep't 2004) .............................................................................................. 13

*Gordon v. Kaleida Health*,
847 F. Supp. 2d 479 (W.D.N.Y. 2012) .................................................................................. 13

*Greathouse v. JHS Sec. Inc.*,
784 F.3d 105 (2d Cir. 2015) ................................................................................................... 16

*Grochowski v. Phoenix Const*,
318 F.3d 80 (2d Cir. 2003) ....................................................................................................... 9

*Heredia v. Americare, Inc.*,
No. 17 CIV. 06219 (RWL), 2020 WL 3961618 (S.D.N.Y. July 13, 2020) ........................ 9, 10

*Holcomb v. Iona Coll.*,
521 F.3d 130 (2d Cir. 2008)........................................................................................21

*Hollander v. American Cyanamid Co.*,
895 F.2d 80 (2d Cir. 1990)..........................................................................................21

*International Ass'n of Machinists v. Gonzales*,
356 U.S. 617 (1958).....................................................................................................4

*Irizarry v. Catsimatidis*,
722 F.3d 99 (2d Cir. 2013)............................................................................................1

*Johnson v. Eastchester Union Free Sch. Dist.*,
211 F. Supp. 2d 514 (S.D.N.Y. 2002)........................................................................18

*Johnson v. Palma*,
931 F.2d 203 (2d Cir. 1991)........................................................................................20

*Kassman v. KPMG LLP*,
925 F. Supp. 2d 453 (S.D.N.Y. 2013).........................................................................16

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
563 U.S. 1 (2011)........................................................................................................16

*Kaufman v. Allied Pilots Ass'n*,
274 F.3d 197 (5th Cir. 2001).........................................................................................4

*Lieberman v. Gant*,
630 F.2d 60 (2d Cir. 1980)..........................................................................................23

*Livadas v. Bradshaw*,
114 S. Ct. 2068 (1994)..................................................................................................5

*Llanos v. Brookdale Univ. Hosp. & Med. Ctr.*,
No. 10-CV-1726 DLI RML, 2011 WL 809615 (E.D.N.Y. Mar. 2, 2011)...................7

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
842 F.2d 590 (2d Cir. 1988)........................................................................................20

*Maxey v. Rest. Concepts II, Ltd. Liab. Co.*,
654 F. Supp. 2d 1284 (D. Colo. 2009)........................................................................19

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792(1973).........................................................................................14, 15, 19

*Messinger v. JPMorgan Chase Bank, N.A.*,
126 F. Supp. 3d 376 (S.D.N.Y. 2015).........................................................................23

*Metro. Life Ins. Co. v. Massachusetts*,
   471 U.S. 724 (1985) ............................................................................................5

*Mullins v. City of N.Y.*,
   626 F.3d 47 (2d Cir. 2010) ................................................................................14

*New Moon Shipping Co. v. MAN B&W Diesel AG*,
   121 F.3d 24 (2d Cir. 1997) ...........................................................................11, 12

*Petras v. Johnson*,
   No. 92-CV-8298, 1993 U.S. Dist. LEXIS 8464, 1993 WL 228014 (S.D.N.Y.
   Jun. 22, 1993) ....................................................................................................13

*Republic Steel Corp. v. Maddox*,
   379 U.S. 650 (1965) .........................................................................................4, 7

*Ross v. DeLorenzo*,
   28 A.D.3d 631 (2d Dep't 2006) .........................................................................13

*Salamea v. Macy's E., Inc.*,
   426 F. Supp. 2d 149 (S.D.N.Y. 2006) .................................................................7

*Salazar v. Bowne Realty Assocs., L.L.C.*,
   796 F. Supp. 2d 378 (E.D.N.Y. 2011) ..........................................................14, 15

*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*,
   359 U.S. 236 (1959) ...................................................................................*passim*

*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*,
   436 U.S. 180 (1978) ............................................................................................5

*Seiden Assocs. v. ANC Holdings, Inc.*,
   959 F.2d 425 (2d Cir. 1992) ..............................................................................11

*Semper v. New York Methodist Hosp.*,
   786 F. Supp. 2d 566 (E.D.N.Y. 2011) .................................................................7

*Sharkey v. Lasmo (AUL Ltd.)*,
   214 F.3d 371 (2d Cir. 2000) ..............................................................................14

*Silverman v. Verrelli*,
   No. CIV.A. 11-6576 SRC, 2012 WL 395665 (D.N.J. Feb. 7, 2012) ...................6

*Smith v. City of New York*,
   385 F. Supp. 3d 323 (S.D.N.Y. 2019) ...........................................................18, 19

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) .................................................................................15, 21, 23

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981) ........................................................................................21

*Torres v. Gristede's Operating Corp.*,
628 F. Supp. 2d 447 (S.D.N.Y. 2008) ..............................................14, 17, 23

*Turner Network Sales, Inc. v. Dish Network L.L.C.*,
413 F. Supp. 3d 329 (S.D.N.Y. 2019) ..........................................................11, 12

*Vaca v. Sipes*,
386 U.S. 171 (1967) ..........................................................................................7

*Walling v. Youngerman–Reynolds Hardwood Co.*,
325 U.S. 419 (1945) ..........................................................................................8

*Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503*,
62 F. Supp. 3d 300 (S.D.N.Y. 2014) ................................................................6

*Wang v. Palmisano*,
157 F. Supp. 3d 306 (S.D.N.Y. 2016) ............................................................20

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000) ..............................................................................23

*Well Luck Co v. F.C. Gerlach & Co.*,
421 F. Supp. 2d 533 (E.D.N.Y. 2005) ............................................................11

*Wright v. Merk*,
118 F. Supp. 3d 1228 (E.D. Wash. 2015) ........................................................4

*Yenrab, Inc. v. 794 Linden Realty, LLC*,
68 A.D.3d 755 (2d Dep't 2009) ......................................................................13

**Statutes**

29 U.S.C. § 158(a)(5) ........................................................................................4

29 U.S.C. § 185(a) ............................................................................................6

29 U.S.C. § 207(a)(1) ........................................................................................8

29 U.S.C. § 215(a)(3) ......................................................................................14

Davis-Bacon Act (40 U.S.C.A. 276a) ............................................................10

FLSA ..........................................................................................................*passim*

N.Y. Labor Law § 215 ................................................................................14, 16

LMRA § 301 ................................................................................................... 6, 7, 8

NLRA § 7 ........................................................................................................... 4

NLRA ........................................................................................... 1,2, 3, 4, 5, 8

NLRA § 8(a)(5) ................................................................................................. 4

NLRA § 9(a) ...................................................................................................... 4

**Other Authorities**

Restatement (Second) of Contracts 212(1) ..................................................... 10

## PRELIMINARY STATEMENT

Defendants Skanska Koch, Inc., ("Skanska Koch") and Skanska USA, Inc.[1] (collectively "Defendants" or "Skanska"), respectfully submit this memorandum of law in support of their motion for summary judgment with respect to each Count of the First Amended Complaint ("FAC")

The cornerstone to Counts One through Seven of the FAC is Plaintiff's claim that his base wage should not be set by the collective bargaining agreement ("CBA") between Skanska Koch and his NJ Based IUOE Local 825 Union ("Union"), but by a provision of the construction agreement between Skanska Koch and the Port Authority of New York and New Jersey ("PA") (the "Construction Agreement").[2] In an attempt to supplant the terms of employment negotiated between his employer and his Union on his behalf, he asserts a state common law claim as a putative third-party beneficiary of the Construction Agreement with respect to a provision of the Construction Agreement that states that he should be paid according to a "Davis-Bacon" wage rate referenced in the Construction Agreement for time worked in New York only.[3]  In essence, Plaintiff seeks to enforce a third-party agreement which – if enforced – would require Defendants to violate the terms and conditions of employment negotiated by his Union as his exclusive representative, constituting an Unfair Labor Practice ("ULP") prohibited by the National Labor Relations Act

[1] Plaintiff alleges that Skanska Koch and Skanska USA, Inc. constitute "joint employers" because "Defendants have an arrangement to share Plaintiff's services, Skanska Koch is acting directly in the interest of Skanska USA, and/or Defendants share control of Plaintiff and other similarly situated employees because Skanska USA controls Skanska Koch." (FAC, ¶ \13).  Defendants maintain Skanska USA not a proper party to this lawsuit.  Plaintiff has not sufficiently pled, nor has Plaintiff adduced any evidence that Skanska USA, Inc. was his employer or a "joint employer." *See Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013).  Accordingly, all claims against Skanska USA, Inc. must be dismissed.

[2] Counts 1 and 2 are limited to overtime hours worked in NY. Count 3 seeks higher wages for all work performed in NY. Counts 5, 6, and 7 are limited to non-overtime hours.

[3] Plaintiff also claims entitlement to "New York City prevailing wage rates"; however, Plaintiff fails to offer any facts to support any theory that he could receive those rates.  In any event, to the extent he is seeking any wage rate not stated in his CBA, preemption applies.  Likewise, Plaintiff's CBA rates were higher than the Davis-Bacon rates for New Jersey.  Under his logic, he was overpaid for his time worked in New Jersey.

("NLRA").  As such, his breach of contract claim, and all claims which rely upon it (Counts 1 through 7) are preempted by the National Labor Relations Act and the Labor Management and the Labor Management Relations Act. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 221 (1985).

Plaintiff's First and Second Causes of Action for overtime compensation under NYLL and FLSA must be dismissed for the additional reason that those laws require overtime compensation calculated at a rate set by an employee's actual wage, rather than a wage to which a claimant alleges it is entitled to under some other legal theory. Because Plaintiff admits that he was paid overtime at time and one half the regular rate of pay he actually received, he can assert no claim under these laws for unpaid overtime compensation.

Plaintiff's Fourth Cause of Action under NYLL Article 6 must be dismissed for the additional reason that he admits that his wage statements properly detailed the wages actually received. NYLL Article 6 requires wage statements which accurately reflect compensation provided; it does not provide a mechanism by which to reestablish a base wage allegedly due Plaintiff under some other legal theory.  Plaintiff's common law claims of *quantum meruit* and unjust enrichment (Counts 5 and 6) must be dismissed because they are duplicative of his contract claims and/or the terms of his employment are set by a contract (either the Construction Agreement, or his CBA). The Seventh Cause of Action must be dismissed because he has failed to establish that Skanska Koch breached the Construction Agreement.

Plaintiff's Eighth and Ninth Causes of articulate alleged retaliation claims under NYLL and FLSA. It is undisputed that in April 2019 he asked Skanska to pay him a wage rate set forth in the New York IUOE Local 14 agreement because he thought it was unfair that he was performing the same type of work as the workers covered under the Local 14 agreement, but was being paid less,

in accordance with his NJ IUOE Local 825 agreement. (SOMF ¶ 92).  Notably, he no longer claims he should be paid the NY IUOE Local 14 rates. He asserts that, as a result of his request: 1) he soon thereafter ceased being assigned to any weekend overtime work in New York, and;  2) more than six months later he was not specifically requested by Skanska  from the Union hiring hall after a holiday mass-layoff on the Project. The undisputed facts fail to establish the elements of a prima facie case of retaliation. For example, it is clear that requesting a wage increase from his employer does not constitute protected activity under NYLL or FLSA. Even if Plaintiff has established a prima facie case, he has no evidence to carry his burden of proving that Skanska's legitimate nondiscriminatory reasons for such actions are a pretext for discrimination

## STATEMENT OF FACTS

The Court is respectfully referred to Defendants' SOMF, and the accompanying Declarations/Affidavits.

## LEGAL ARGUMENT.

## POINT I.

## PLAINTIFF'S WAGE CLAIMS (COUNTS 1 TO 5) ARE PREEMPTED BY FEDERAL LABOR LAW.

**A.**     **Plaintiff's Claims are pre-empted by the NLRA under *Garmon***

Counts 1 through 7 all rely upon the premise that terms and conditions of employment negotiated by his Union, on his behalf, are superseded by a provision in the Construction Agreement requiring the payment of different wage rates, i.e., "Davis Bacon" rates referenced therein As such, those Counts are preempted by the NLRA.

The U.S. Supreme Court has found preemption in cases where state statutes or common law claims concern conduct which is arguably permitted or prohibited by the NLRA. *Garmon*, 359 U.S.

236; *International Ass'n of Machinists v. Gonzales*, 356 U.S. 617 (1958); *Republic Steel Corp. v.
Maddox*, 379 U.S. 650, 652–53 (1965). This seminal ruling is known as "*Garmon* Preemption."

According to § 8(a)(5) of the NLRA it is an unfair labor practice ("ULP") for an employer
to refuse to engage in collective bargaining with its employees' union. 29 U.S.C. § 158(a)(5)
(codifying § 8(a)(5) of the Act). An employer commits a ULP by refusing to negotiate with its
employees' union over mandatory subjects of collective bargaining. These mandatory subjects,
listed in § 9(a) of the NLRA, are: "rates of pay, wages, hours of employment, or other conditions
of employment." Id. § 159(a) (codifying § 9(a) of the Act).  In addition to a literal refusal to sit
down at the bargaining table, an employer also violates § 8(a)(5) by unilaterally implementing a
change in the workplace that violates its collective bargaining agreement. *Bldg. Trades Employers'
Educ. Ass'n v. McGowan,* No. 98 CIV. 4998 (MBM), 2001 WL 682740, at *3 (S.D.N.Y. June 18,
2001), *rev'd on other grounds*, 311 F.3d 501 (2d Cir. 2002).

The Supreme Court held in *Garmon*:

> When it is clear or may fairly be assumed that the activities which a State purports
> to regulate are protected by § 7 of the National Labor Relations Act, or constitute an
> unfair labor practice under § 8, due regard for the federal enactment requires that
> state jurisdiction must yield. To leave the States free to regulate conduct so plainly
> within the central aim of federal regulation involves too great a danger of conflict
> between power asserted by Congress and requirements imposed by state law.

*Garmon*, 359 U.S. at 244.

"Conduct only need be "arguably subject to § 7 or § 8 of the [NLRA]" to be preempted
under *Garmon*. *Garmon*, 359 U.S. at 245. *Garmon* and its progeny have been applied to preempt
state statutes and state common law claims which concern activities which are protected or
prohibited under the NLRA. *See Kaufman v. Allied Pilots Ass'n*, 274 F.3d 197 (5th Cir. 2001)
(holding that state law claims of tortious interference with contract were federally preempted under
*Garmon* and must be dismissed); *Wright v. Merk*, 118 F. Supp. 3d 1228, 1237 (E.D. Wash. 2015)

(holding the plaintiff's implied contract claim was preempted under *Garmon*); *Livadas v. Bradshaw*, 114 S. Ct. 2068 (1994) (federal law preempted Commissioner's policy construing state law to bar enforcement of statutes requiring employers to pay all wages due immediately upon employee's discharge, and imposing penalty for refusal to promptly pay, if terms and conditions of employee's employment were governed by collective bargaining agreement containing arbitration clause); *Barbieri v. United Techs. Corp.,* 255 Conn. 708, 745–46 (2001) (holding that plaintiffs' claims, which seek to enforce individual contracts for the payment of the wage supplements above the bargained-for wage rates in the collective bargaining agreement, are subject to the exclusive jurisdiction of the National Labor Relations Board under *Garmon* and its progeny.)

*Garmon* preemption protects the federal scheme of regulation of labor relations as well as the Board's primary jurisdiction to decide what conduct is protected or prohibited in labor-management relations under the NLRA. Such preemption thereby assures a coherent national labor policy. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748 (1985); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 187–88 (1978); *see also Air Transp. Ass'n of Am. v. Prof'l Air Traffic Controllers Org*., 667 F.2d 316, 323 (2d Cir.1981) ("*Garmon* rests primarily on the need to ensure a consistent body of federal labor law by preempting potentially inconsistent state court adjudication.").

Plaintiff's first seven Counts depend upon a third-party agreement which purports to require Skanska Koch to provide compensation at variance with the applicable CBA. He asserts that claim only for time worked on the New York side of the Project. That claim is prohibited under the <u>*Garmon*</u> Preemption doctrine.

Plaintiff is a member of the New Jersey based International Union of Operating Engineers Local 825 ("Union" or "Local 825") who worked for a period of time on the George Washington

Bridge project (the "Project") which spans New York and New Jersey. (*See* SOMF ¶¶1-9).  As a Union member, Plaintiff's terms and conditions of employment are governed by the collective bargaining agreements ("CBA") between Skanska Koch and the Union which serves as his sole and exclusive collective bargaining representative regarding all terms and conditions of his employment.  Similarly, all trade workers on the project are represented by their respective unions which serves as their sole and exclusive collective bargaining representative.  Any claim that a third-party agreement should supplant the IUOE Local 825 agreement regarding Plaintiff's wages or other terms and conditions of employment is preempted under the *Garmon* preemption doctrine.  To the extent that Cortese seeks to assert an alleged violation of his collective bargaining agreement, or a failure by his Union to pursue wage claims, or other claims, on his behalf, his claims are preempted by the LMRA as discussed below.

## B.      Plaintiff's Claims are Pre-empted under the LMRA

The Union and Skanska met to discuss issues concerning the bi-state nature of the project and each agreed that the Home Local Rule would govern. Plaintiff now claims that, as a third party beneficiary of the Construction Agreement, he is entitled to pay which differs from that his CBA and the agreed upon Home Local Rule.  Any such claim is preempted by LMRA Section 301. [4]

Courts have recognized the applicability of the extraordinary "complete preemption doctrine" under LMRA § 301 where a claim involves analysis of a CBA. *See, e.g., Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503*, 62 F. Supp. 3d 300, 303 (S.D.N.Y. 2014); *Silverman*

---

[4] Section 301 states as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

*v. Verrelli*, No. CIV.A. 11-6576 SRC, 2012 WL 395665, at *3 (D.N.J. Feb. 7, 2012). When the resolution of a state law claim is inextricably tied to a CBA "that claim must either be treated as a §301 claim […] or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 221 (1985).  Common law breach of contract claims are preempted by LMRA Section 301 and therefore must either be dismissed or converted into a claim under Section 301.[5] Plaintiff not only fails to establish any of the essential elements of a Section 301 claim[6], but he also failed to plead same and, accordingly, Counts One through Five of the FAC must be dismissed because Plaintiff's claims cannot be converted.

As a bi-state Project, work involved local unions from both New York and New Jersey representing workers of the same craft. For example, Skanska Koch employed crane, hoist and compressor operators from both New Jersey based Local 825 and its sister-local, the New York based IUOE Local 14 with wages, benefits and sometimes competing claims to geographic jurisdiction being set by the workers' respective collective bargaining agreements. Plaintiff admits that he received all compensation owed to him under the Local 825 CBA and the Home Local Rule for all work hours on the project. He admits that Skanska Koch and other unions who would be

---

[5] Plaintiff's Claims 1 through 7 are attempts, through various legal theories, to supplant this Union negotiated terms and conditions of employment with the "Davis Bacon" wage rate referenced in the Construction Agreement. However, Plaintiff, as a Union-member, must assert any non-statutory claim for wages through the grievance procedure of his CBA, the NLRB, or LMRA Section 301 (if coupled with a duty of fair representation claim, as discussed *infra*).

[6] Under Section 301 jurisprudence, generally, the Employer and the Union are the parties to the CBA and an individual cannot sue either on their own behalf or on behalf of other employees because they lack standing. *See Brown v. Sterling Aluminum Prod. Corp.*, 365 F.2d 651, 657 (8th Cir. 1966) (holding that where the right sought to be enforced is not uniquely personal to the individual, the Union is the sole representative with standing to enforce that right). Generally, if there is a grievance/arbitration process, a plaintiff must exhaust it first. *See Republic Steel Corp. v. Maddox*, 379 U.S. at 652–53; *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 156 (S.D.N.Y. 2006) (holding that the employees failed to exhaust her administrative remedies where the claims fell squarely within the scope of the grievance and arbitration provisions). There are certain prerequisites for an employee to make a claim under LMRA Section 301, including making a simultaneous claim that the union breached its duty of fair representation, which have not been met here.  *See Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 585 (E.D.N.Y. 2011); *Llanos v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 10-CV-1726 DLI RML, 2011 WL 809615, at *2 (E.D.N.Y. Mar. 2, 2011).

working with either geographic jurisdiction - including Local 825- intended that the "Home Local" rule would apply to this bi-state Project. Specifically: 1) trades people would be entitled to work anywhere on the span notwithstanding the geographical jurisdictional boundaries of an employees' own local union; 2) that such employees would receive compensation according to their respective CBAs irrespective of the place of work; 3) Skanska would endeavor to assign work between the competing sister local unions to approximately equalize work hours between the two locals over the life of the Project.  At its essence, Claims 1 through 7 all seeks to delve into and upset the terms and conditions of employment, bargained-for on his behalf by his exclusive bargaining representative. (SOMF ¶ 26).  As such they are preempted by the NLRA and LMRA Section 301.

## POINT II

### PLAINTIFF'S OVERTIME CLAIMS UNDER FLSA (COUNT 1) AND NYLL (COUNT 2) MUST BE DISMISSED BECAUSE HE RECEIVED OVERTIME COMPENSATION AT HIS ACTUAL BASE RATE WHICH IS ALL THAT THESE LAWS REQUIRE.

The FLSA requires that employees be paid overtime compensation equal to at least "one and one-half times **the regular rate at which [the employee] is employed,**" for all hours worked in excess of forty per week.  29 U.S.C. § 207(a)(1).  The United States Supreme Court has determined that the regular rate of pay under the FLSA refers to the "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419 (1945); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 459–60, 68 S. Ct. 1186, 1194, 92 L. Ed. 1502 (1948)("[T]he rule for determining the regular rate of pay is to divide the wages actually paid by the hours actually worked in any workweek and adjudge additional payment to each individual on that basis for time in excess of forty hours worked for a single employer"). The same rule applies under the NYLL. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 361 (E.D.N.Y. 2015) (holding that under the NYLL, the correct rate is based on the rate *actually paid* to [plaintiff] for normal, non-overtime hours).  Courts

in this circuit have held that while the FLSA requires employers to pay each employee a guaranteed minimum wage, it does not provide liability for underpayment of hours at prevailing wage rates. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003). Plaintiff does not dispute that he received overtime at time and a half the base wage rate (the CBA rate) he actually received. (SOMF ¶¶ 92-105). Accordingly, Plaintiff's First and Second Claims for Relief must be dismissed.

## POINT III

### PLAINTIFF'S NYLL ARTICLE 6 CLAIM (COUNT 4) MUST BE DISMISSED BECAUSE HE FAILS TO SUFFICIENTLY ALLEGE OR PRODUCE EVIDENCE OF A VIOLATION OF LAW

Plaintiff's claim under NYLL Article 6 is wholly reliant upon the success of his other wage claims. Plaintiff has conceded that he is not claiming that the information on his pay statements was wrong or incomplete; rather, he is only claiming that he should have been paid a different wage and benefit rate. (SOMF ¶¶ 92-105). *See Heredia v. Americare, Inc.*, No. 17 CIV. 06219 (RWL), 2020 WL 3961618, at *15 (S.D.N.Y. July 13, 2020)(granting summary judgment to defendants on wage statement claims where plaintiffs' sole allegation was that they were not provided with statements reflecting wages claimed under claims which were likewise dismissed). Further, Plaintiff's paystubs and/or wage statements would be inaccurate if they reflected payments not actually received. For the above reasons, Count 4 must be dismissed.

## POINT IV

### PLAINTIFF'S COMMON LAW CLAIMS MUST BE DISMISSED

**A.    Plaintiff Has Failed To Prove A Breach Of The Construction Agreement.**

The evidence in the record establishes that Skanska Koch, plaintiffs Union and the PA all agreed that workers would be paid according to their "home local rates" regardless of the exact physical location of work performed. Since no breach has been established, his claim must be dismissed.

The Restatement (Second) of Contracts 212(1) states: "[t]he interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances" and notes in the comment that same is not limited to cases where it is determined that the language used is ambiguous, but rather, the interpretation of a contract "should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties".

The Construction Agreement states in pertinent part:

"[The Contractor must pay] at least the prevailing rate of wage and supplements for others engaged in the same trade or occupation in the **locality in which the Work is being performed** as determined by the Engineer. For purposes of this Contract, the Engineer has determined that the prevailing rates of wage and supplements are those established by the Secretary of Labor of the United States pursuant to the Davis-Bacon Act (40 U.S.C.A. 276a) for the locality in which the Work is to be performed. The schedule of wages and supplemental benefits which are currently in effect is attached hereto. However, the applicable rates shall be those which are in effect on the date of opening of Proposals."

(SOMF ¶ 10-12).  The Construction Agreement defines the term "Work" broadly to include all work on the job irrespective of which state the work is actually performed in.  (*Id.* at 11) .

The issue is that there is no "locality" for the Project; it exists within a space above two States and requires the utilization of unions whose geographical jurisdictional boundaries may be unclear, or may be in conflict. To the extent that there is any uncertainty, it has been resolved by requiring that workers be paid according to the CBA to which they are bound while at the same time permitting them to work anywhere on the Project.  (SOMF  ¶13-24).¶  "[A] contract is ambiguous if its terms 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, N.A., 773

F.3d 110, 114 (2d Cir. 2014) (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)).  Under such circumstances, "extrinsic evidence may properly be considered in the search for the contracting parties' intent."  *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992).

When engaging in "a course of dealings analysis," a court "focuses on the actions of the parties with respect to a specific issue that the parties may have encountered before" and typically requires evidence of "an indication of the common knowledge and understanding of the parties." *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997).  "An inference of the parties' common knowledge or understanding that is based upon a prior course of dealings is question of fact."  *Turner Network Sales, Inc. v. Dish Network L.L.C.*, 413 F. Supp. 3d 329, 344 (S.D.N.Y. 2019) (quoting *New Moon*, 121 F.3d at 31).  It is proper for a court to "dispose of a contract interpretation dispute on summary judgment, . . . if the court finds . . . that there is relevant extrinsic evidence, but such evidence is so one-sided that it does not create a genuine issue of material fact."  *Id.* at 343 (quoting *Nycal Corp. v. Inoco P.L.C.*, 988 F. Supp. 296, 299-300 (S.D.N.Y. 1997)). "Although the existence of a prior course of dealing between contracting parties is generally a factual issue, where one party fails to contest the material facts of its prior course of dealing, a court may find that a course of dealing existed as a matter of law." *Well Luck Co v. F.C. Gerlach & Co.*, 421 F. Supp. 2d 533, 540 (E.D.N.Y. 2005).

Here, the extensive course of dealings between Defendants and the PA demonstrate that the Home Local Rule complies with the parties' contractual intent.  (SOMF ¶¶ 13-28).  As a result, the contracting parties' conduct is "not . . . compatible with the agreement as written."  *See Dall. Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) (quoting *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 344 (1977)).  There is no evidence that any party to the Construction Agreement

considered that Cortese's pay violated the Construction Agreement. Indeed, the overwhelming evidence shows that everyone involved, except Plaintiff, agreed that he was paid in conformity with the Construction Agreement. (SOMF ¶¶ 13-28). The Davis Bacon clause, states that he must be paid at least those scheduled wages for the "locality" in which the work is performed. (SOMF ¶ 10).¶ All parties understood that the Home Local Rule complied with that requirement. Skanska Koch reported, every month to PA exactly what it was paying to each worker. (SOMF ¶ 30). Those reports do not distinguish regarding actual place of work but do set pay based upon the "locality" covered by the worker's union geographic jurisdiction. (SOMF ¶¶ 29-31). In the context of a specific issue concerning compensation for Ironworkers, Skanska Koch stated to the PA that it was paying in accordance with the longstanding Home Local Rule applied on this and other projects. (SOMF ¶¶ 32-35). PA did not state that the rule violated the Construction Agreement. To the contrary. It stated that "for the purpose of this contract, and specifically for the trade workers classified as Ironworkers… his union agreement shall govern for the purpose of prevailing rate of wage." (*Id.*). In addition, Cortese complained directly to the PA and its agent responsible for labor compliance. (SOMF ¶ 36). The PA never asserted that there was a breach of the Construction Agreement. It did state, however, that if he was dissatisfied with his pay that was a labor relations issue which he should address through his Union representative. (*Id.*). As a result, there is no genuine dispute of material fact that Defendants' payment practice constitutes Defendants' and the PA's consistent course of dealings over many years. *See Turner*, 413 F. Supp. 3d at 344 (holding summary judgment is proper when "there is relevant extrinsic evidence . . . so one-sided that it does not create a genuine issue of material fact." (quoting *Nycal*, 988 F. Supp. at 299-300)). *See New Moon*, 121 F.3d at 31. Therefore, Plaintiff's breach of contract claim fails and all claims which rely upon it should be dismissed as a matter of law.

**B.** **Plaintiff's Claims Of Unjust Enrichment And Quantum Meruit Are Duplicative Of His Breach Of Contract Claim And Therefore Must Dismissed.**

Unjust enrichment is a quasi-contractual remedy, designed to provide a party with an opportunity for a recovery in the absence of an express agreement.  A claim based on an implied contract cannot be maintained where there is an express contract governing the subject matter of the dispute.  *Clark-Fitzpatrick Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388 (1987):

> The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter [citation omitted]. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. Id.

*See also Yenrab, Inc. v. 794 Linden Realty, LLC*, 68 A.D.3d 755, 758 (2d Dep't 2009) (same); *Ross v. DeLorenzo*, 28 A.D.3d 631, 635-36 (2d Dep't 2006) (a party may not recover in quantum meruit where a valid and enforceable contract governs the relationship between the parties); *Goldstein v. CIBC World Markets Corp.*, 6 A.D.3d 295, 296 (1st Dep't 2004) ("A claim for unjust enrichment, or quasi contract, may not be maintained where a contract exists between the parties covering the same subject matter.").  Plaintiff's terms and conditions of employment are set by the agreement the Union negotiated on his behalf.  (SOMF ¶¶ 26, 37).  Plaintiff, oddly, states that because the Construction Agreement references a Davis Bacon rate, he relied on that statement and therefore can assert a claim for Quantum Meruit or Unjust Enrichment. Claims that are inherently contract claims cannot pursued under Quantum Meruit theories and must be dismissed. [7] Additionally, as a matter of fact, although he alleges reliance in the Complaint, he admitted at deposition that he had

---

[7]Plaintiff's common law claims are likewise pre-empted by the FLSA to the extent they are duplicative.  *See Barrus v. Dick's Sporting Goods, Inc*., 732 F. Supp. 2d 243, 263 (W.D.N.Y. 2010);; *Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 495 (W.D.N.Y. 2012); *Petras v. Johnson*, No. 92-CV-8298, 1993 U.S. Dist. LEXIS 8464, 1993 WL 228014, at *2, 4 (S.D.N.Y. Jun. 22, 1993);

no knowledge of a "Davis Bacon" rate until he filed his lawsuit (SOMF ¶¶ 25, 90-91). He obviously cannot rely upon a representation of which he had no knowledge.

### POINT V

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FLSA AND NYLL RETALIATION CLAIMS (COUNTS 8 and 9)

Under the FLSA's anti-retaliation provision, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C. § 215(a)(3). Likewise, Section 215 of the NYLL provides, in pertinent part, that an employer shall not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter."  NYLL § 215(a)(iii).  Courts recognize that "[t]he standards for stating a claim for retaliation under the FLSA and [NYLL] significantly overlap."  *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011).   "At the summary judgment stage, courts address FLSA [and NYLL] retaliation claims under the familiar 'burden-shifting' framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973)."  *Torres v. Gristede's Operating Corp.,* 628 F. Supp. 2d 447, 471 (S.D.N.Y. 2008); *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374 (2d Cir. 2000) (noting that "[i]t is the judge, not the jury, who must decide whether [a] plaintiff has satisfied the requirements of *McDonnell Douglas's* minimal version of a prima facie case" (second alteration in original)).

The *McDonnell Douglas* burden shifting framework requires a plaintiff to "establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) adverse employment action effecting the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Mullins v.*

14

*City of N.Y.*, 626 F.3d 47, 43 (2d Cir. 2010).  Once the plaintiff has established a prima facie case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]".  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).  At this point, the plaintiff must present admissible evidence by which a jury could find that it is more likely than not that "*both* that the reason was false, *and* that discrimination was the real reason". *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  As discussed in detail below, Plaintiff has not established any of the elements of a prima face case.  Even if Plaintiff could establish a prima facie case, Skanska has provided legitimate, non-retaliatory reasons for why he no longer operated the Mobile Crane in New York and for why it did not request the that Union refer him specifically for the NJ Hoist after the December, 2019 mass-layoff, namely the needs of the construction project at the time.  (SOMF ¶¶ 65-89; 106-123).  At best, plaintiff has only temporal proximity with respect to his request for NY IOUE Local 14 collective bargaining agreement rates for certain work and the cessation of overtime time work operating the Mobile Crane in New York. Temporal proximity alone is insufficient to survive summary judgment in this Circuit.  *See El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010). There is no temporal proximity with respect to the recall after the December, 2019 layoff.

**A.**    **Plaintiff Fails To Establish A Prima Facie Case**

    i.    Plaintiff Cannot Establish that he Engaged in a Protected Activity

        With regard to the first prong, courts typically find that the filing of a complaint alleging FLSA and NYLL violations "constitute[s] a 'protected activity' under both statutes." *Salazar*, 796 F. Supp. 2d at 384 (citing *Mullins,* 626 F.3d at 43).  However, "to satisfy the first prong of the test for a prima facie claim of retaliation, 'a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, **as an assertion of rights**

**protected by the statute and a call for their protection**.'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011))(emphasis added). "[A] a plaintiff must allege that he or she complained about a specific violation of the Labor Law to support a claim of retaliatory discharge pursuant to Labor Law § 215". *Epifani v. Johnson*, 65 A.D.3d 224, 236 (2009).  The complaint must be a colorable violation of the statute and involve a type of violation under the statute. *See Castagna v. Luceno*, No. 09-CV-9332 CS, 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011), aff'd, 744 F.3d 254 (2d Cir. 2014), and aff'd, 558 F. App'x 19 (2d Cir. 2014)("[a]ll that is required is that the complaint to the employer be of a colorable violation of the statute."); *Brands-Kousaros v. Banco Di Napoli S.P.A.,* No. 97 CIV. 1673 (DLC), 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997) ('[T]he protected activity alleged must involve some sort of complaint about a type of discrimination that [the statute] forbids.").[8]

In *Kassman*, the plaintiffs allegedly made various internal complaints including regarding salary cuts, denial of bonuses, and discrimination and harassment generally; however, the Court held that none of the complaints were sufficiently clear and specific to have articulated a violation of rights under FLSA or NYLL or call for protection under the statutes. *Id.*

The Complaint alleges, in conclusory terms that he "complained to Defendant about wage and hour violations on the Project".  (SOMF ¶ 1; FAC ¶¶ 94-116). . There are no factual allegations to support that conclusion. Indeed, Plaintiff testified that his only "complaint" to Skanska Koch was merely that he believed he should be paid the NY IUOE 14 rates for all work on the job because it

---

[8] Additionally, in *Kasten*, the Supreme Court declined to resolve the question of whether a verbal or written "complaint" to a private employer, rather than a complaint to an administrative agency, or in court, constitutes a protected activity under the FLSA.  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011).  While the Second Circuit has held that protected activity under the FLSA include oral complaint to the employer, *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015), the Supreme Court has yet to opine on same.

was "unfair" that Local 14 members were more highly compensated for performing the same work as he. (SOMF ¶¶ 91-92). He did not even remotely allege a violation of a right protected by the minimum wage or overtime provisions of FLSA or NYLL. Notably, Plaintiff subsequently abandoned any claim that he is entitled to NY based IUOE Local 14 rates at any time. Plaintiff has failed to present any colorable alleged violation of NYLL or FLSA, nor was he complaining about anything that could be considered a violation under the law. Accordingly, Plaintiff cannot establish that he engaged in protected activity under the FLSA or NYLL.

ii.     Plaintiff Cannot Establish that he was Subjected to an Adverse Employment Action

As to the second prong, "[i]n order to establish an adverse employment action, a plaintiff alleging retaliation must 'show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of'" FLSA and/or NYLL violations. *Torres,* 628 F. Supp. 2d at 473 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). As "[t]he FLSA and NYLL use similar language to describe what conduct is prohibited in their anti-retaliation provisions[,] . . . use of similar standards for what constitutes an adverse employment action also seems appropriate." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 304 (S.D.N.Y. 2011) (citing 29 U.S.C. § 215(a)(3); NYLL § 215(a)(iii)).

Courts throughout the country recognize that "not everything that makes an employee unhappy is an actionable adverse employment action." *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1136–39 (N.D. Ga. 2004) (quoting *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001)). "[R]eassignment of job duties is not automatically actionable". *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 71 (2006). Courts have determined that "receiving unfavorable work schedules that impact child-care arrangements, being assigned less favorable duties, or repeatedly being sent home are not prohibited retaliatory actions as a matter of law."

17

*Copantitla*, 788 F. Supp. 2d at 304; *see also Johnson v. Eastchester Union Free Sch. Dist.,* 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002)("The change must be " 'more disruptive than a mere inconvenience or an alteration of job responsibilities' " to be materially adverse.").  Examples of adverse employment actions include when an employee is reassigned with significantly different responsibilities, demoted, suspended without pay, or terminated.  *See Burlington*, 548 U.S. at 79; *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  "Summary judgment is appropriate when a plaintiff provides no evidence "to show that the transfer was to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement."" *Smith v. City of New York,* 385 F. Supp. 3d 323, 333 (S.D.N.Y. 2019)(quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000)).

Plaintiff cannot demonstrate that a materially adverse employment action was taken against him. Plaintiff asserts two acts of retaliation (1) being assigned exclusively to the NJ Hoist -full time-rather than being provided additional opportunity to work regular or overtime hours in New York on the Mobile Crane,  and (2) Skanska's alleged failure to request him specifically from the Union hiring hall for NJ Hoist operation after the 2019 holiday mass-layoff.  (SOMF ¶¶ 85, 108).  With respect to Cortese's alleged "reassignment", Cortese has failed to demonstrate any material changes.  Being assigned to a particular crane alone cannot be an adverse employment action and any claim by Plaintiff that his assignment affected the amount of overtime he received is unsupported by the evidence in the record and purely speculative. As Courts in this Circuit have recognized, reassignment without a significant change in job responsibilities is not an adverse employment action.  Cortese's pay did not change when he was allegedly reassigned.  As deposition testimony has revealed, Plaintiff was assigned to the NJ Hoist due to the needs of the construction site at the time he was working.  He was given some work on the mobile crane upon starting due to

the stage of construction they were in; however, once he was trained on the custom hoist on the New Jersey side and the needs of the job site changed, he was assigned to work on same.  (SOMF ¶¶ 48-61).  Different operating licenses were required for the mobile crane versus the hoist and, when Cortese was originally hired, the job site required someone who would be able to operate both.  (SOMF ¶¶ 38-40, 48-61).

With respect to the alleged failure to specifically request Cortese for the NJ Hoist after the December 2019 layoff, Cortese cannot demonstrate either that doing so was an adverse employment decision or that it was motivated by his internal request to be paid NY IOUE Local 14 rates.  The record evidence establishes that, after the layoff, the job site required only someone who would be able to operate the NJ Hoist rather than someone with a Crane license, like Cortese.  (SOMF ¶¶ 106-130).  Accordingly, it specifically requested someone who could operate only the NJ Hoist for which Skanska Koch could set a lower wage rate. (*Id.*). At that point, the Union Hiring Hall had the option to send whoever they wanted as long as they met the minimum qualifications of the position. (*Id.*).

Employers have no affirmative duty to act in favor of a former employee in the rehiring process after a mass layoff.  In *Wado v. Xerox Corp.*, the court found that the applicable statute, the Age Discrimination Employment Act ("ADEA") which is also analyzed under the *McDonnell Douglas* framework, "only prohibits [an employer] from discriminating against older employees; it does not require employers to discriminate in favor of them." 991 F. Supp. 174, 201 (W.D.N.Y. 1998) (emphasis added); *see also Maxey v. Rest. Concepts II, Ltd. Liab. Co.*, 654 F. Supp. 2d 1284, 1292 (D. Colo. 2009) (holding that the ADEA requires employers to evaluate their employees on their merits, but "[i]t does not, however, require employers to evaluate employees perfectly, fairly, or even rationally—employers are free to exercise their sound business judgment in personnel

matters and may discipline and terminate at will employees for any reason, so long as it is not unlawful.") (emphasis added); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) (holding that courts do "not read the [Americans with Disabilities Act] as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less.").

iii.   Plaintiff Cannot Establish a Causal Connection Between His Alleged Protected Activity and the Alleged Adverse Employment Actions

To establish a "causal connection, a plaintiff must allege (1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *Wang v. Palmisano*, 157 F. Supp. 3d 306 (S.D.N.Y. 2016) (alteration in original) (quoting *McNair v. N.Y.C. Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001)); *see also Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) (observing that a causal connection may be demonstrated "through evidence of retaliatory animus directed against a plaintiff by the defendant"); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that a causal connection is established "by showing that the protected activity was closely followed in time by the adverse action."). The FAC not allege retaliatory animus, nor does the record evidence show that Defendants were upset or angry at Plaintiff in any way.  Plaintiff also does not allege or present any evidence of disparate treatment of similarly situated employees.   Accordingly, it appears that Plaintiff intends to rely on temporal proximity alone to establish his retaliation claim.

With respect to the alleged "adverse employment action" of failure to specifically request him from the Union after the December, 2019 layoff, Plaintiff cannot demonstrate causation because, not only is there no discriminatory animus or differential treatment, there is also no

temporal proximity.  While there is no bright line rule in the Second Circuit with regard to temporal

proximity, Courts have found that a period of several months is too attenuated.  *See Hollander v.*

*American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding that three months was too

long); *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 98-99 (S.D.N.Y. 2011) (finding that two to

three months was too long for temporal proximity).  The only alleged adverse employment action

which bears any temporal proximity to his alleged "protected activity" is his assignment to the NJ

Hoist.[9]  Even assuming a "protected activity" and an "adverse employment action", temporal

proximity alone is typically insufficient to demonstrate causation.  *Clark Cty. Sch. Dist. v. Breeden*,

532 U.S. 268, 273-74 (2001) ("the cases that accept mere temporal proximity . . . as sufficient

evidence of causality to establish a prima facie case uniformly hold that the temporal proximity

must be <u>very close</u>.") (emphasis added).

## B.       <u>Defendants' Legitimate, Non-Retaliatory Reasons</u>

If the Plaintiff sets forth a prima facie case under all three prongs above, "the burden shifts

to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action."  *Holcomb*

*v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802).  It

is important to note that the United States Supreme Court emphasized that the employer's obligation

at this stage is only a burden of production.  *St. Mary's Honor Ctr.*, 509 U.S. at 506-07.  Further, it

is well established that the employer must provide its reason "through the introduction of admissible

evidence" and should "frame the factual issue with sufficient clarity so that the plaintiff will have

a full and fair opportunity to demonstrate pretext."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S.

248, 255-56 (1981).

---

[9] As discussed <u>supra</u>, the assignment to the NJ Hoist is not an adverse employment action.

The record evidence establishes legitimate, non-retaliatory reasons for (1) assigning Plaintiff exclusively to the stationary NJ Hoist and (2) not specifically requesting Cortese from the Union hall after the December, 2019 layoff. At the time of his hire, Skanska intended to employ him in the NJ Hoist exclusively, albeit with some Mobile Crane work in the initial stages until the NJ Hoist was needed full-time. (SOMF ¶¶ 40-61). Accordingly, Skanska requested from the Union Hall a referral of someone with a Crane license, which requires higher compensation, under the collective bargaining agreement, than the requirements of a Hoist operator. (SOMF ¶¶ 59-60). He was hired, went through orientation and training and worked both in the NJ Hoist and on a Mobile Crane -sometimes in New York- for several days during the first few weeks of his employment. (SOMF ¶¶ 62-73). By May 2019, the demands of the project needed a full-time NJ Hoist Operator and accordingly, he took his seat in the NJ Hoist and worked there until the December, 2019 layoff. His pay was not reduced as a result. (SOMF ¶¶ 73-80). In December, 2019 most of the workers on the Project, except for a few laborers to handle cleanup, were laid off for several weeks during the holidays due to the project shut-down and after the layoff only approximately seventy-three out of one hundred and four positions were refilled. (SOMF ¶¶ 106-107; 119-120). By the time of the recall, Skanska no longer needed the NJ Hoist operator to also possess a Crane license and advised the Union of same when a request was made for a hoist operator. (SOMF ¶¶ 115-116). The Union referred Wagner, who does not possess a Crane License and who receives less compensation than Cortese; but is fully qualified to operate the NJ Hoist. (SOMF ¶¶ 123-130). Presumably, the Union could have referred Cortese, rather than Wagner, but chose not to do so, believing that Cortese would prefer not to work at the lower rate. Plaintiff has failed to present any admissible evidence to demonstrate that it is more likely than not that both the reason provided by Defendants is false

and that discrimination was the real reason, which he must prove to survive summary judgment. ". *St. Mary's Honor Ctr.*, 509 U.S. at 515.

**C.**     **Plaintiff Cannot Prove Pretext, i.e. That Skanska Koch's Stated Reasons Are Both False And That Retaliation The True Reason For Its Decisions**

Should the defendant present a legitimate, non-retaliatory reasons for the action, the plaintiff must present "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Pretext is established by showing that the "asserted neutral basis was so ridden with error" that the employer could not honestly have relied on it to justify the adverse employment action. *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980). Thus, summary judgment in favor of the defendant on FLSA or NYLL claims is proper even if a plaintiff has sufficiently pled a prima facie case when the court determines that "a reasonable juror [could not] find that the reason offered by the defendant is mere pretext for retaliation." *Torres*, 628 F. Supp. 2d at 472.

Notably, the Second Circuit has held that the "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . , but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." *El Sayed*, 627 F.3d at 933; *see also Borzon v. Green*, 778 F. App'x 16, 19 (2d Cir. 2019)(holding that plaintiff "failed to rebut Defendants' asserted reasons for his termination with evidence of retaliatory animus on their parts, and the temporal proximity between his termination and his lodging of the complaint, without more, cannot sustain such a finding".); *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 255 (2d Cir. 2014)(affirming grant of summary judgment to defendant where plaintiff "has alleged nothing beyond temporal proximity to establish pretext"); *Messinger v. JPMorgan Chase Bank, N.A.*, 126 F. Supp. 3d 376, 387–88

(S.D.N.Y. 2015)(holding that where plaintiff relied on same evidence as purportedly supported his discrimination claim and temporal proximity, the evidence was insufficient to demonstrate pretext). Likewise, ""[P]urely conclusory allegations of discrimination, absent any concrete particulars," are insufficient." *Cameron v. Cmty. Aid For Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003).

Plaintiff has an incredibly high burden to establish that the reasons provided by Skanska were pretextual. The reason for the employment action does not need to be a good reason, so long as it is not retaliatory. *DeLuca v. Allied Domecq Quick Serv. Restaurants,* No. 03-CV-5142(JFB)(AKT), 2006 WL 1662611, at *9 (E.D.N.Y. June 13, 2006)(holding that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Here, it is abundantly clear that Cortese's assignments were directly related to the needs of the job at the time and that Skanska sought workers from the hiring hall, as required, in accordance with the operational needs of the job site at the time. (SOMF ¶¶ 65-89, 106-130). Plaintiff has adduced no evidence that these legitimate reasons are not truly legitimate, but instead are a pretext for discrimination. Accordingly, his retaliation claims must be dismissed.

## CONCLUSION

Based on the foregoing, the Defendants' motion for summary judgment should be granted in its entirety.

Dated:  New York, New York
       December 1, 2020

PECKAR & ABRAMSON, P.C.

By:    */s/ Gregory R. Begg*
_____

Gregory R. Begg, Esq.
1325 Avenue of the Americas, 10th Floor
New York, NY  10019
(212) 382-0909
    *Attorneys for Defendants Skanska Koch, Inc.,*
      *and Skanska USA, Inc,*